70 P.(2d) 760

MERCHANTS BANK (BURKE, Intervener) v. DUNN et al.

No. 4223.

Supreme Court of New Mexico.

July 14, 1937.

W. A. Keleher and Theo. E. Jones, both of Albuquerque, for appellants.

Marron & Wood, of Albuquerque, and H. C. Denny and H. S. Glascock, both of Gallup, for appellees.

SADLER, Justice.

This is a suit by the Merchants Bank, a banking corporation, of Gallup, N. M., as plaintiff, to set aside a conveyance of certain real estate located in the town of Gallup, as a voluntary conveyance made in fraud of creditors. The grantors in the deed of conveyance, John J. Dunn and Mabelle A. Dunn, his wife, of Gallup, and the grantee therein, A. E. Thiffault, of Chicago, Ill., were made defendants to the suit. While the suit was pending and before trial, John J. Dunn in the meantime having been adjudicated a bankrupt, his trustee in bankruptcy, Frank J. Burke, intervened in the suit, adopted the allegations of the complaint, and prayed that said deed be set aside and the property adjudged in ownership of the bankrupt for the benefit of all his creditors.

The case was tried at Gallup on December 5, 1935. Within a week prior thereto, on November 27th, the defendant Thiffault, by consent of all parties, had been orally examined out of order as a witness in his own behalf at Santa Fé and a transcript of his testimony preserved. Upon the trial, when plaintiff had rested its case, the defendants moved for a dismissal, themselves tendering no testimony or evidence. This motion the court properly treated as a demurrer to the evidence. However, in their argument upon the motion, so treated, counsel for plaintiff dealt with the testimony of defendant Thiffault, not theretofore introduced, and consented that the court might take same into consideration in ruling on the demurrer. Ac-

cordingly, if the testimony of Thiffault is to be considered, the most that can be said of it, and counsel for defendants do not seriously contend otherwise, is that the transcript thereof came in as a part of plaintiff's case in chief, to which defendants' demurrer was directed along with all other evidence adduced by plaintiff. We shall so treat it.

The trial court sustained defendants' demurrer to the evidence and dismissed the complaint. From the judgment so rendered the plaintiff and the intervener join in this appeal, praying a revision and correction thereof. A statement of the facts is necessary to test correctness of the trial court's ruling on the demurrer.

On December 28, 1933, the defendants Dunn and wife signed two notes in plaintiff's favor in the total principal amount of $9,800, renewing an indebtedness of the Dunns which originated some five years previously in the sum of $11,500. As security for the debt and on the same date the notes for $9,800 were signed, the Dunns executed a mortgage in plaintiff's favor on some improved real estate in Gallup.

On January 19, 1934, less than three weeks later, the Dunns joined in a conveyance to defendant Thiffault of certain other real estate in Gallup, consisting of improved town lots, by a deed reciting as the consideration "the sum of ten ($10.00) * * * and other good and valuable considerations." There were attached to the deed canceled documentary revenue stamps in the amount of three and one-half dollars.

This deed was promptly recorded. At the time of this conveyance, the property mortgaged to plaintiff only three weeks prior thereto had a value not to exceed $7,750. There was no evidence that the Dunns owned any other property, real or personal, than that mortgaged to plaintiff and that conveyed to defendant Thiffault. The property conveyed to Thiffault had a net value of $3,500 at the time of its conveyance.

Mrs. Thiffault and Mrs. Dunn were first cousins. Mrs. Dunn had been reared in the home of Mrs. Thiffault's mother from the time she was a child five or six years of age and was looked upon as a member of the family.

Actual consideration for the conveyance from the Dunns to· Thiffault as testified by Mr. Dunn and Mr. Thiffault, each being placed on the stand at plaintiff's compulsory call, was a loan from Thiffault to the Dunns made in the year 1931. Each related the same story touching this loan.

So related, it happened in this wise: In June, 1931, Mr. Dunn visited Chicago, asked and received of Thiffault a loan of $1,500. Proceeds of the loan were paid over in currency. Later, in August, 1931, Mrs. Dunn went to Chicago and asked and received an additional loan of $2,000, also paid in currency. The currency was removed by Thiffault from his safety deposit box in a named bank and delivered to Mr. and Mrs. Dunn, respectively, at the times mentioned, in Thiffault's home with no witness present in either instance. No receipt, note, or other

evidence of the loan was asked or given at that time.

Subsequently, a note on a form printed by Valient Printing Company of Albuquerque, N. M., was signed by the Dunns and mailed to Thiffault in Chicago. The note was dated August 4, 1931. Its maturity was one year from date. It provided for 10 per cent. interest from date, 10 per cent. attorney's fees, if placed with an attorney for collection, and was in the principal sum of $3,500, aggregate of the two loans testified to. According to Mr. Thiffault, this note was received by him in the mails "shortly after August 4th," 1931, its date; according to Mr. Dunn he sent it to Thiffault at Chicago with reference to the note's date, "sometime afterward * * * maybe a month or two * * * maybe three months." Whereas, according to the witness John C. Blaine of Valient Printing Company of Albuquerque, the note was one of an invoice of five thousand promissory note forms on Hammermill Bond paper not printed by his company until February 15, 1932.

Interest remained unpaid on the note from its date until settlement by transfer of the property to Thiffault, or from August 4, 1931, to January 18, 1934. During this period of approximately two and one-half years, although the note reached maturity at the end of one year, Thiffault made no demand upon the Dunns for payment either of principal or interest. No communication of any kind ever passed between them with reference to the note. Then, shortly before the conveyance in January,

1934, Thiffault, feeling some concern regarding the indebtedness, notwithstanding two and one-half years' silence on the subject, suddenly and of his own notion left Chicago for Gallup for the purpose of securing a settlement. The note he left behind in his safety deposit box, where it had remained unexamined and untouched since its receipt from the Dunns.

Arriving in Gallup he finally got around to the matter of the note. In Thiffault's own words the settlement came about thusly: "I asked if he was in a position to take care of this obligation. He said he didn't have any ready cash and spoke about the mortgage he had on those three buildings with the bank, *and the only thing he had to offer in settlement was this property on Coal Avenue*. After considering the matter we took it up with Mr. Denny and closed the deal." (Italics ours.)

Thus, according to the stories of Dunn and Thiffault, and under the circumstances related by them, was the loan made and settled.

Default having resulted on the $9,800 indebtedness due plaintiff, in due course it instituted foreclosure proceedings. On March 5, 1935, a deficiency judgment was entered against the Dunns for $3,323.50 as the amount remaining due plaintiff after applying proceeds of the sale of the mortgaged real estate. On April 27, 1935, the defendant John J. Dunn was adjudicated a bankrupt by the United States District Court for the District of New Mexico. Frank J. Burke was appointed his trustee

in bankruptcy, duly qualified as such, and intervened in this suit, aligning himself with the plaintiff for the benefit of all creditors, as aforesaid.

The sole question before us is: Did the court err in sustaining defendants' demurrer to the evidence? Or, to put it differently, did the evidence make out a prima facie case of fraudulent conveyance in favor of the plaintiff and the trustee in bankruptcy of defendant John J. Dunn? We think it may be taken as agreed by the parties that the conveyance to Thiffault was fraudulent as to existing creditors ·if it was voluntary and rendered John J. Dunn insolvent. If the evidence supports an inference of insolvency and that the deed was voluntary, the demurrer. should have been overruled; otherwise, not. A statement of the rule applicable is necessary.

 Upon demurrer to the evidence the demurrant admits as true all portions of the evidence and reasonable inferences flowing therefrom which tend to prove the allegations of the petition. The court cannot weigh conflicting evidence nor consider the case as submitted by defendant on plaintiff's showing. Union Bank v. Mandeville, 25 N.M. 387, 183 P. 394; Mansfield v. Reserve Oil Co., 38 N.M. 187, 29 P.(2d) 491. Applying this test, we have no hesitancy in declaring plaintiff's evidence made out a prima facie case and that the trial court erred in sustaining the demurrer thereto.

We may pass decision of the first point argued. It is that the recited consideration for the deed prima facie showed it to be voluntary under the authority of Rogers v. Balduini, 28 N.M. 102, 206 P. 514. It was there held that a conveyance by a woman largely indebted of all her property, worth $6,000, for a recited consideration of $1, was prima facie fraudulent against her creditors. The deed before us recites as consideration, "ten ($10.00) * * * and other good and valuable considerations." Defendants contend this makes a difference. Cf. Zuniga v. Evans, 87 Utah, 198, 48 P. (2d) 513, 101 A.L.R. 532. But why consider this argument when we know from the evidence the consideration was either satisfaction of a loan of $3,500 from grantee to grantors or nothing? The real inquiry becomes, then, whether the circumstances surrounding the purported loan, unexplained, or not further explained, support an inference that no such loan in fact was made. We hold they do support such an inference.

Much of the argument of defendants' counsel would be pertinent to a question of our right to disturb findings of the trial court made upon the submission of a cause on the merits but wholly inapplicable where the evidence is being tested on a demurrer. In the latter case the court does not weigh conflicting evidence. On the contrary, it disregards the conflict and such portions of the evidence as tend to weaken or disprove the issue plaintiff must sustain, and considers as true only such evidence, with its accompanying favorable inferences, as supports the material allegations of the petition. Such· is the price the demurrant must pay for having the evidence tested on demurrer. If it seems too great, let' him

meet the issue. He hazards nothing on the result of his test. If sustained, he has thus far prevailed. If he loses, either before the trial court or here, he takes up right where he left off, opens his case, and puts on his evidence. In view of these considerations, this price seems not too great.

Accordingly, notwithstanding the fact that Dunn and Thiffault were on the stand as plaintiff's witnesses, though hostile, to accept as true their story of the loan would be to destroy rather than support the material allegations of the petition. The door to inferences, under the rule, may not so quickly be closed. The court must hear their story through before permitting inferences to arise. Thus considered, the unusual nature of the transaction; the close relationship of the parties; the passing from lender to borrower of $3,500 in currency outside the presence of witnesses; the taking of no receipt therefor at the time; presentation of a note as evidence of the debt claimed to have been executed shortly after August 4, 1931, or at most within two or three months thereafter, on a form testified by the printer not to have been printed until February 15, 1932; silence of the parties concerning the transaction as between themselves for two and one-half years with no demand for payment either of interest or principal; and, finally, a trip from Chicago to Gallup by the lender to secure a settlement without taking with him the note which was to be the basis of any settlement arrived at—these circumstances, viewed in the light of the financial condition of the Dunns, certainly cast such suspicion on the whole transaction, if not further explained, to support an inference that the loan never in fact took place.

But, it is said by defendants' counsel, there is nothing in the evidence to support an inference of insolvency. Plaintiff's counsel counters with the suggestion that no such defect in the proof was raised at the trial as a ground of the demurrer. Cf. Blacklock v. Fox, 25 N.M. 391, 183 P. 402; Schaefer v. Whitson, 32 N.M. 481, 259 P. 618; Jackson v. Gallegos, 38 N.M. 211, 30 P.(2d) 719.

We find it unnecessary to consider this contention, since in our view the evidence warrants an inference of insolvency. On December 28, 1933, the Dunns admittedly were indebted in the principal sum of $9,800, secured by a mortgage on certain real estate. This eventuated into a deficiency judgment of $3,323.50 in March, 1935. John J. Dunn was adjudicated a bankrupt in April following. Cf. Rogers v. Balduini, supra. On January 18, 1934, less than three weeks following execution of the $9,800 in notes and the mortgage, the deed in question was delivered. The cashier of plaintiff bank knew of no other real estate owned by John J. Dunn than that covered by the plaintiff's mortgage and Thiffault's deed, nor of any cash.

Thiffault testified that when he got Dunn's agreement to pass the deed, Dunn said he had no ready cash, mentioned plaintiff's mortgage on other property owned, and further that "the only thing he (Dunn) had to offer in settlement was this property on Coal Avenue." If it was, its conveyance

in the light of other facts shown gives rise to an inference of insolvency.

It seems apparent to us from comment of the trial judge at the time of sustaining defendants' demurrer that, although considering the evidence before him as on demurrer, he erroneously resolved conflicts therein as though deciding on the merits. The defendants should have been compelled to proceed with their case. In so doing they may entirely overcome the unfavorable inferences arising from the evidence as it now stands.

The judgment of the lower court will be reversed. The trial court is directed to overrule defendants' motion to . dismiss, treated as a demurrer to the evidence, and proceed further in the trial of the cause conformably to the views herein expressed.

It is so ordered.

HUDSPETH, C. J., and BICKLEY and BRICE, JJ., concur.

ZINN, J., did not participate.