[Civ. No. 14006.   Second Dist., Div. Two.   Apr. 5, 1943.]

ADA E. DAUPHINE, Petitioner, v. INDUSTRIAL ACCI-
DENT COMMISSION et al., Respondents.

Fred M. Cross for Petitioner.

Everett A. Corten and R. C. McKellips for Respondents.

MOORE, P. J.—The question presented by this original proceeding for review is whether decedent's surviving widow is barred from recovering compensation for the loss of her husband by virtue of the "going and coming" rule or did he receive his fatal injuries in an automobile collision while engaged on a special mission for his employer. In approaching a solution we are not unmindful of the wholesome guiding rules by which the reviewing court is not to determine the weight to be given the evidence (*Dearborn* v. *Industrial Acc. Com.*, 187 Cal. 591 [203 P. 112]), or which of two opposing inferences should be drawn therefrom. (*Western Pacific R. R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413 [224 P. 754].) But measured by the testing tape, to wit, whether his work reasonably necessitated his use of his automobile on the occasion of his accident (I Campbell, Workman's Compensation p. 177), we are forced to the conclusion that decedent's errand on the morning of his tragic collision was in prosecution of his official duties and that his resultant death is compensable.

Decedent, Everett G. Dauphine, was chief assistant to the County Forester and Fire Warden who was the head of the Department of County Forestry and Fire Warden. Such department maintained divers and numerous field offices, warehouses and parks in separate and remotely distant points within the county. His home was in Inglewood and about twelve miles from his office in the city of Los Angeles. Ordinarily he rode the trolley car and drove his automobile only when it was necessary for him to visit some public property in connection with his official duties which occurred only three or four times a month. On the 10th day of February, 1942, about 8 a.m., decedent left his home in Inglewood in his own automobile for his office.

Decedent's duties required his supervision of finances and personnel and his inspection of camps, warehouses and parks in all nonincorporated areas. He spent eight hours each month in making such inspections. Also he was the department's business and fiscal manager. Admittedly his "functions were broad enough to include a discretion to perform such duties

on his way'' to and from his home without a previous order from his superior. Complaints had been made by a park patron who had deposited his coin in a light meter slot without success and without recovering his money. Such complaints required an investigation by decedent. In addition to such specific complaint, decedent had knowledge that the revenues formerly received from the patrons of the tennis courts who deposited their moneys in the meter slots for light had offset the electric bill for the park. As fiscal manager of the department and author of its budget then in the course of preparation it was important that decedent ascertain possible sources of revenue. Moreover, decedent was under bond to collect all moneys received at the park and he had been especially requested by his superior in authority to collect such moneys. That decedent had not learned of the removal of the meters from the park prior to his visit is immaterial so far as his obligation to make the inspection was concerned. The record does not disclose the slightest motive for his visit to the park aside from his official duties.

Excepting his automobile he had no available means of conveyance from his home to Ladera Park some two and one-half miles distant. With office engagements for nine o'clock, it was not unreasonable for decedent to calculate on completing his inspection at Ladera Park so as to reach the civic center on time. Having disposed of a personal matter at a point about a half mile southwest of his home he proceeded in a northwesterly direction to Ladera Park where he arrived at 8:30. He asked the maintenance man for the foreman and stated that he had called to check the meters. He made his exit on Slauson Avenue which bounds the park on its north side. It is true that after leaving Ladera Park decedent might have proceeded east on Slauson to Figueroa, a principal crosstown boulevard, as was his habit in driving from his home to his office. But it is not unreasonable for a motorist to vary his route of travel in crossing a great city. The course he chose was not unusually hazardous. Neither was it longer than that which he customarily traveled. Accidents happen on any street or boulevard. But the question of his lack of care is not involved. The only ultimate fact to be found by the commission was whether decedent was driving within the scope of his employment at the time of his collision. We think that

no other finding could reasonably have been made from the uncontradicted facts.

Respondent was evidently misled by the fact that on departing from his home decedent first visited a clinic for a metabolism test. But he could have made the visit to the clinic and have there taken the trolley car for the city. On leaving the clinic he drove northwesterly to the park, whereas, if matters at the park had not required his attention he would reasonably have traveled northeasterly from the clinic. His course from the clinic to the park was substantially the same as it would have been from his home to the park. As proof of his having deemed the park visit a duty at the time, it necessitated two and a half miles more travel than by going his customary route to his office.

(1) It is contended by respondents that decedent suffered his injuries while on the way from his home to his place of work; that the mission which took him to Ladera Park was not the major factor among the causes for his travel by automobile or for his pursuing the route along Cimmaron Street. No reasonable conclusion can be reached from the evidence other than that Mr. Dauphine went to Ladera Park for the sole purpose of discharging his duties and that in traveling from the park he took a proper course to reach his office. The work to be done created the necessity for his travel by automobile. If the workman is injured while in the execution of a special mission for his employer compensation will not be denied him because he was on his way to his place of work. (*Matthews* v. *Naylor*, 42 Cal.App.2d 729 [109 P.2d 978].) He is not under such circumstances bound by the going and coming rule. (*Fenton* v. *Industrial Acc. Com.*, 44 Cal.App. 2d 379, 383 [112 P.2d 763].) Decedent had arrived at the park to perform his special mission. After leaving the park and before the collision occurred he had proceeded some miles on his way to his place of work. Inasmuch as he was bent upon the performance of such official task, his injuries would have been none the less compensable had he driven southwest to reach the park or had he been injured on his way to the park. (*County of Los Angeles* v. *Industrial Acc. Com.*, 18 I.A.C. 102.)

His deviation from his course to the park in order to visit the clinic was not a material fact in view of his safe return to the course of travel toward the park. (I Campbell's,

*supra,* sec. 190.) But since the decedent had already made his call at the park and performed his duties, compensation would not be denied him had the clinic adjoined the park so long as his work created the necessity for travel. (I Campbell's, sec. 188; *Marks* v. *Gray,* 251 N.Y. 90 [167 N.E. 181].) If a trip is made by the employee solely for personal advantage it is not compensable; if made solely for his employer it is compensable. If the trip is for the combined advantage of the employer and the employee, compensation is determined according to whether the interest of the employer was the major factor in inducing the travel (*Grieb* v. *Hammerle,* 222 N.Y. 382 [118 N.E. 805, 7 A.L.R. 1075]) or whether the service of the employer is at least incidental to or a concurrent cause of the trip (I Campbell's *supra,* p. 177; *Barragar* v. *Industrial Acc. Com.,* 205 Wis. 550 [238 N.W. 368, 78 A.L.R. 679]).

(2) Not only was decedent acting in the course of his employment at the time of receiving his injuries and therefore compensable but since his stop at the park was admittedly for a business purpose, his meeting with the colliding car was directly caused by the performance of his task. Having the authority to determine the time, place and manner of performing his "special mission," he has the right to compensation to the same extent as if he had been sent directly to the park by the superintendent. His visit to Ladera Park was reasonably contemplated by virtue of his official duties (*Employer's Liability Assurance Corp.* v. *Industrial Acc. Com.,* 37 Cal.App.2d 567, 573 [99 P.2d 1089]; *Union Oil Co.* v. *Industrial Acc. Com.,* 211 Cal. 398 [295 P. 513]).

(3) In view of the facts and of the doctrine requiring a liberal construction of the act in favor of an injured employee (*Morrison* v. *Industrial Acc. Com.,* 42 Cal.App.2d 685, 690 [109 P.2d 767]) we cannot avoid the conclusion that a finding and award against the applicant was arbitrary and therefore in excess of respondent's jurisdiction.

The order of the Industrial Accident Commission is annulled and the commission is directed to make an award in accordance with the evidence adduced at the hearing.

Wood (W. J.), J., and McComb, J., concurred.