233 P.2d 792

**MRACEK et al. v. DUNIFON.**
No. 5312.

Supreme Court of New Mexico.

July 5, 1951.

Vincent M. Vesely, Clyde T. Bennett, Silver City, for appellants.

Carl P. Dunifon, Silver City, Hugh E. Wall, Jr., Dayton, Ohio, for appellee.

SADLER, Justice.

This appeal is prosecuted by claimants, Albert P. Mracek, Albert F. Mracek, his son, Max L. Rice and Therese A. Harrigan, from the judgment of the district court of Grant County, where administration proceedings on the estate of Rev. Roger Aull, deceased, were pending following removal from the probate court, disallowing in whole or in part separate claims of the respective appellants. Upon motion of the claimants mentioned, the district court ordered a consolidation of their claims for the purposes of this appeal. Accordingly, they are before us for review upon a single record. Since the statement of facts found in the brief of appellee, the administrator of decedent's estate, contains a rather succinct and compact review of the facts, it will be largely followed in giving a general history of the case employing only facts that are within the findings, or about which there is really no dispute.

The appeal arises from the disallowance of claims filed by appellants against the estate of Rev. Roger Aull who died at his home in Grant County, intestate, on August 4, 1948. He was a Catholic priest, a member of the Passionate Religious Order. His health having failed, his Order located him in New Mexico for health reasons. Eventually, he settled near Central, in this state in September, 1940, where, at the invitation of appellant, Albert P. Mracek, he established and built a home on an unpatented mining claim located by the former.

Prior to coming to New Mexico, Fr. Aull had become interested in a machine designed to relieve persons suffering from respiratory disorders, the patent on which

was owned by a friend of long standing, one Emmett L. Harrigan. Fr. Aull visited him in Cleveland, Ohio, in 1935 and there for the first time observed the machine's operation. Soon after returning to New Mexico, Mr. Harrigan sent him two or three of the machines, known in the trade by the name of "Halox." Because the machine benefited him, Fr. Aull became impressed by its curative properties. Following the death of Mr. Harrigan in January, 1945, Fr. Aull entered into a written agreement with Mrs. Harrigan, one of the appellants, effective November 4, 1946, under which he was to have the exclusive right to manufacture, sell and lease the Halox machines on a royalty basis.

Fr. Aull manufactured the machines in a small factory building which he erected on part of the mining claim adjoining his home near Central. Appellant, Albert P. Mracek, was employed by him as manager of the business and was in charge of its books. His son, Albert F. Mracek and Max L. Rice, appellants herein, worked in the factory. The business was known either as the Halox Manufacturing Company; or, on occasions, the Halox Therapeutic Generator Company, a sole enterprise belonging to Fr. Aull.

Shortly after starting the manufacture of the Halox machines, Fr. Aull established a second, solely owned institution, known as the Father Aull Foundation. Separate books, records and bank accounts were kept by it. The Foundation purchased the Halox machines from the Halox Manufacturing Co. and then leased them to clinics, for the most part under an arrangement requiring the lessee to pay, in advance, a minimum five-year rental plus an amount equal to 10 per cent. of the gross income derived monthly from the use of the machines.

During the latter part of 1947, the federal government's Pure Food and Drug Administration began an investigation regarding the Halox machine. Earlier that year Fr. Aull and Mrs. Harrigan instituted a suit in the federal court in Tucson, Arizona, against a third party, charging the manufacture of a machine which allegedly infringed upon the Harrigan patent. Disliking the publicity likely to attend the foregoing and also wishing his name as a priest not to become involved, Fr. Aull instructed an attorney friend, Anthony T. Deddens of Bisbee, Arizona, to prepare a bill of sale purporting to transfer to Albert P. Mracek all of seller's interest in the business known as "Halox Manufacturing Company" together with its good will, etc.; a declaration of trust to be signed by Mracek, declaring himself trustee of the Halox assets for Fr. Aull; and an agreement whereby Mracek was to act as a sub-licensee under Fr. Aull's. November 4, 1946, agreement with Mrs. Harrigan.

Mracek did not sign either the trust agreement or the sub-license agreement, claiming to have returned all three documents to Fr. Aull with a statement that he would have nothing to do with the transaction. Following the death of Fr. Aull on August 4, 1948, by some two months, appellant Albert P. Mracek showed up with the bill of sale claiming it was returned to him by Fr. Aull with a statement that it was to be effective as of the date borne by it. This bill of sale became the chief support of the claim by this appellant against the estate of Fr. Aull, consisting of some eight items. In view of the fact that the appeal involves the separate claims of four distinct claimants, it will conduce to an intelligent understanding of the case if we consider the claims in the order in which they appear in the record.

The Albert P. Mracek claim consisted of eight items. The first, or item No. 1, was for the aggregate of two separate bank accounts, one the so-called Halox account in American National Bank at Silver City in the sum of $4,208 and the other the Father Aull Foundation account in the same bank in the sum of $1,981.83, the two totaling $6,189.83.

Item No. 2, was a claim for an amount said to be known to the administrator but unknown to the claimant representing moneys claimed to have been collected by the administrator for leased machines and from doctors and clinics as royalties. Item No. 3 represented a claim for a total of $1,000. It was said to have been loaned by claimant to Fr. Aull at the rate of $200 per month for a period of five months subsequent to the claimed effective date of bill of sale.

Item No. 4 represented a claim for $1,293.89 to cover bills and accounts said to have been owed by Fr. Aull and to have been paid by claimant between December 1, 1947, and January, 1948. Item No. 5 was a claim for $850, plus interest, for balance said to be due the claimant for machines manufactured by him at $8 per machine under promise of Fr. Aull to pay the additional sum of $2 on each machine at a later date to cushion a drop in business.

Item No. 6 was a claim for $398 said to be due for the manufacture of 29 machines at $10 each and sold at Tombstone, Arizona, and for 36 additional machines manufactured by claimant and used in the Tombstone Clinic of which clinic Fr. Aull was reputed to be a part owner. Item No. 7 was a claim for $21,000 said to have been advanced to Fr. Aull upon his request, partly from the Halox Bank account and partly from the Father Aull Foundation account, both in the bank mentioned above, to meet expenses in prosecuting the Arizona suit for infringement of the patent right under which the Halox machines were manufactured and for defending a suit then

lately filed in a federal court in California for a claimed violation of the Pure Food, Drug and Cosmetic Act in the manufacture and sale of Halox machines.

The last and final item of Albert P. Mracek's claim, designated item No. 8, is for an unnamed amount representing premium on a fire insurance policy on personal property of Fr. Aull, as well as storage charges on the personal property; also damages in an unnamed and allegedly unknown amount said to have been suffered by claimant in the loss of business resulting from lack of funds due to the administrator's act in taking charge of all money belonging to the decedent; and, in addition, the reasonable rental value of property since decedent's death. Except to reserve action on the rental item to fix its reasonable amount in the event administrator and claimant could not agree, the court disallowed in toto all other items making up this claim of Albert P. Mracek. Since he assigns no error on the disallowance of this item of his claim, it will not be the subject of further mention.

Since all items of the claim filed by the foregoing claimant on which error is here assigned, except 5 and 6, rested wholly upon acceptable proof that the bill of sale dated December 1, 1947, was unconditionally delivered to him by Fr. Aull during his lifetime, if claimant's proof on this issue failed, then all items of his claim dependent on it failed also. Thus it becomes important to examine the trial court's findings touching this claim. They follow, along with the conclusions of law drawn from them by the court.

"Findings of Fact

"I. That at all times prior to his death on August 4, 1948, Rev. Roger Aull was the sole owner and proprietor of two separate proprietorships established by him, known as 'Halox Manufacturing Company' and 'Father Aull Foundation.'

"II. That Rev. Roger Aull caused to be prepared and signed some time after December 17, 1947, a certain bill of sale (Claimant's Exhibit 1), bearing the date of December 1, 1947, intending to convey certain assets of Halox Manufacturing Company to Albert P. Mracek as trustee for Rev. Roger Aull.

"III. That there is no credible proof of unconditional delivery of said bill of sale or of any valuable consideration supporting it.

"IV. That at all times from the dates of the establishment of Halox Manufacturing Company and Father Aull Foundation to the date of Rev. Roger Aull's death on August 4, 1948, Albert P. Mracek was never more than an employee of said Rev. Aull and had no proprietory interest at any time in any of the assets of Halox Manufacturing Company or Father Aull Foundation.

"V. That Albert P. Mracek was paid in full by Rev. Roger Aull during his lifetime, in accordance with their agreement, for all services rendered by said claimant to and for Rev. Roger Aull.

"VI. That at the time of his death, Rev. Roger Aull was not indebted to Albert P. Mracek for any money loaned to him or for any business or personal obligations of Rev. Roger Aull paid by him as claimed.

"VII. That Albert P. Mracek has submitted no credible proof in support of his claim that Carl P. Dunifon as Administrator of the Estate of Rev. Roger Aull, is indebted to him for the reasonable value of the use and occupancy of his land from the date of Rev. Roger Aull's death.

"Conclusions of Law.

"From the foregoing facts, and from the files and records of this cause, the Court doth conclude as a matter of law:

"I. That the Court has jurisdiction of the subject matter of this action and of the parties hereto.

"II. That the credible proof as to each and every item of claimant's claim against Carl P. Dunifon, Administrator of the Estate of Roger Aull, deceased, fails to comply with and to meet requirements of Section 20–205 of the New Mexico Statutes Annotated, 1941 Compilation.

"III. That each item of claimant's claim must be disallowed for the reason that there was no such credible proof of unconditional delivery of the bill of sale as is required by Section 20–205 New Mexico Statutes Annotated, 1941 Compilation.

"IV. That each item of claimant's claim must be disallowed for the reason that there was no such credible proof of a valuable consideration as is required by Section 20–205 New Mexico Statutes Annotated, 1941 Compilation.

"V. That there is no credible proof of any material fact alleged in respect to the items of this claim that will satisfy the requirements of Section 20–205 New Mexico Statutes Annotated, 1941 Compilation.

"VI. That each and every item of claimant's claim should be denied, (except as to item 8, AWM DJ).

"VII. That judgment be entered in conformity hereto."

The findings disclose serious doubt on the trial court's part in the story related from the witness stand by claimant as to unconditional delivery to him by decedent of the bill of sale. It was upon the bill of sale that claimant placed complete reliance to support all save two items of his claim. A review of the whole record truly places us in no position to say the finding that the bill of sale was never unconditionally delivered is without substan-

tial evidence to support it. The same may be said as to the issue of consideration for the purported bill of sale. Attorney Dedden's letter of December 17, 1947, to Fr. Aull transmitting Bill of Sale and the later letter from the same attorney to him, dated January 17, 1948, transmitting the Acknowledgment of Trust Agreement and the Sub-License Agreement, which two latter instruments the claimant refused to sign afford rather convincing proof that the intention of Fr. Aull was that unconditional delivery of the bill of sale was to be contingent upon the execution by Mracek of the trust and sub-license agreements, something which he admittedly refused to do.

Appellee seeks to show corroboration of his otherwise wholly unsupported testimony that there was a change in Fr. Aull's intention in this particular by introduction of a letter to Mrs. Harrigan dated July 25, 1948, within a fortnight of his death, in which he mentioned having given claimant a bill of sale and that he, Mracek, was handling the manufacture and distribution of the machines; also the testimony of a Mrs. Henry who served as secretary to Fr. Aull regarding defense of the suit in California.

All this testimony was appraised by the court in the light of the fact that Fr. Aull, so far as the letter to Mrs. Harrigan was concerned was parrying a plea for an additional loan and of her conduct in continuing to treat Fr. Aull as owner of the business, as she had always done in the past; also, in the light of many other facts in evidence so contradictory of and inconsistent with the claim of ownership by Mracek under the bill of sale as to burden the claim with serious and continuing doubt.

For instance, the very plausible reason, why Fr. Aull sought to have another than himself appear as owner of the business so as not to involve his priestly office or his church in embarrassment by litigation, pending or threatened; and conduct of claimant, himself, following execution of the bill of sale in continuing to the very end to treat Fr. Aull as owner of the business. Claimant never told any one he was the new owner. He did not record the bill of sale until two months after Fr. Aull's death. The books of account were never altered to indicate a change in ownership. He never sought to withdraw available funds to satisfy pressing personal needs. These and other highly significant circumstances must have challenged in the trial court's mind the verity of claimant's story.

■ Truly, we cannot say the trial court lacked substantial evidence to support its finding against all the items of this appellant's claim that are bottomed on the bill of sale, viewed either wholly apart

from the statute on corroboration, 1941 Comp. § 20–205; or in the light of it as the decisive test. Paulos v. Janetakos, 41 N.M. 534, 72 P.2d 1; Evans v. Evans, 44 N.M. 223, 101 P.2d 179.

In arguing their position on the question of corroboration, counsel seem either to ignore or disregard the fact that the mere production of evidence which tends to corroborate does not compel the trial court to believe it. It is still subject to the test of credibility by the trial court which may either accept or reject the same after hearing and considering it. Of course, the court may not arbitrarily reject uncontradicted testimony. Medler v. Henry, 44 N.M. 275, 101 P.2d 398. However, contradiction may be circumstantial as well as direct and a statement which on its face seems positive and uncontradicted may find contradiction in subsequent testimony of the very same witness, either on direct or cross examination.

The observations just made are of special importance in our consideration of the next claim of error, argued as Point 4 in appellants' brief in chief. Involved are item 5 of the claim filed by Albert P. Mracek and the claims of Max L. Rice and Albert F. Mracek, son of Albert P. Mracek. As explained by counsel for appellants, these claims are argued together because presented at the same time and in the same fashion below, the three claim-ants mentioned serving as corroborating witnesses for each other. To elucidate, one claimant would present and support his claim by his own testimony, as well as the testimony of the two other claimants as corroboration. This claimant in turn would serve as a corroborating witness for each of the other claimants when he offered proof in support of his claim.

All three claims were of the same kind in that each was for a balance claimed to be due from Fr. Aull on each machine manufactured by the respective claimants. It seems that claimant Albert P. Mracek was being paid the sum of $10 for each machine manufactured in the shop of which he was superintendent, located on the mining claim; and, claimants Max L. Rice and Albert F. Mracek were being paid $25 per machine, one-half of $12.50 going to each, for each machine they manufactured. According to testimony of the several claimants, at some time subsequent to the agreement between them and Fr. Aull to pay for work performed the sums above indicated and due to a slump in business, he asked the three claimants mentioned to take a smaller sum per machine until business improved, promising to make up the difference when conditions grew better. Albert P. Mracek in the meantime was to receive $8 per machine manufactured in what may be called the home factory and claimants Rice and

Albert F. Mracek were to receive $20 for each machine made by them jointly, or $10 each.

The claim of Albert P. Mracek under this item 5 was for a balance due of $850; that of Max L. Rice as filed was for $1,062.50 and that of Albert F. Mracek in the same sum, for a balance said to be due on machines made during the periods covered by their respective claims. However, due to an error in the number of machines involved, reduced by the proof from 425 to 375 as appellants point out, the claims became lowered in amount. Accordingly, it results that Albert P. Mracek claims $750 under his item 5; and Albert F. Mracek and Max L. Rice the sum of $937.50, each.

 Even if we view the testimony by two of the three claimants in support of each claim as corroboration of the other or third one, the trial court had ample support in the evidence for rejecting all three of the claims now under consideration. All arise on an alleged promise of Fr. Aull to restore the amount of pay per machine by which compensation was reduced. Testimony as to the reduction seems clear enough. But, save as to otherwise unsupported testimony of each claimant that Fr. Aull did so promise, there is not an iota of proof that any such promise was ever made and the books of account strongly indicate that it was not. Albert P. Mra-

cek himself kept the books and admitted his familiarity with the elementary rule in bookkeeping of entering the accrual of debts or liabilities, even though payable at a future date. Indeed, he applied it as to accrual of Social Security and State Unemployment Insurance taxes. Yet, he made no entries showing liability for unpaid balances on account of the compensation here involved.

Furthermore, he admitted endorsing check stubs to himself as well as to the other two claimants for "balance of salary" for some of the months for which the additional compensation is now claimed. Finally, Albert Maio, the company auditor, testified Fr. Aull informed him of the reduction in compensation but never of any promise to restore it. It was while discussing the auditor's suggestion that men be laid off to reduce expenses that this conversation took place. Fr. Aull felt that because the men had families to support, it would be better to reduce their pay instead. We entertain no doubt that the trial court had ample justification in holding the proof inadequate to support these claims.

Turning again to the claim of Albert P. Mracek and in particular to item 6 thereof. The claim as originally filed was for $398 for 29 machines manufactured at $10 per machine and sold at Tombstone, Arizona, in June, 1946; plus $3, each, for 36 ma-

chines manufactured and used in the Tombstone Clinic which it was charged, Fr. Aull partly owned. At the trial claimant admitted having checked the books of account with Auditor Maio to discover that claimant already had been paid for so much of this item as related to the 29 machines claimed for at $10, each. This reduced his claim to $3, each, for 36 machines manufactured and used in the Tombstone Clinic, or $108 in the aggregate.

This claim rested almost wholly upon a promise which Fr. Aull made, as testified by claimant, to pay him $3 for each machine manufactured away from the shop or for 6-volt machines. Claimant relies for corroboration on a memorandum slip which he claimed to have made for *himself,* but not a record of the Halox business, showing the number of machines manufactured and sent to the Tombstone Clinic or assembled there. Its admission in evidence was objected to by counsel for appellee as being self-serving, as one prepared by the claimant for his own use as admitted by him and as failing to meet statutory requirements touching corroboration. It was admitted, yet at the same time in passing on the claim, the trial court rejected it as failing to fulfill statutory requirements as to corroboration and as lacking credible evidence to support it. We can find no error in either ruling. The mere showing that a given number of machines were shipped or assembled at the Tombstone Clinic furnished no proof that there was a promise to pay claimant $3, each, on account of them.

Finally, we come to the claim of Therese A. Harrigan, widow of Emmett Louis Harrigan, deceased. In his lifetime, the decedent and his wife owned by assignment and as community property United States Letters Patent No. 2256212 under which the Halox machine was manufactured. As administratrix of decedent's estate and in her own right she filed a claim against Fr. Aull's estate consisting of three items, the last of which, item 3, seems to have been abandoned as no error is assigned, nor findings or conclusions made or requested, with reference thereto. Hence, we shall concern ourselves with items 1 and 2, alone, of the Harrigan claim.

Item 1 of the claim was for a royalty of $25 for each Halox machine manufactured by Fr. Aull as licensee under the terms of a written agreement said to have been entered into between claimant and him on October 22, 1946. Claimant alleged the manufacture of 167 machines prior to June 30, 1947, for which she said she had not been paid, and that decedent's estate was indebted to her by reason thereof in the sum of $4,175 with accrued interest to a date specified in the sum of $407.06, or in the aggregate that

the sum of $4,582.06 was due and unpaid under this item.

Item 2 of the claim was for the sum of $3,296 plus interest of $29.66, or $3,325.66 in all, said to be due under another provision of the written contract as 3 per cent. of the total monthly net income of all machines manufactured and leased commercially by Fr. Aull. The claim is that during the years 1946, 1947 and 1948, decedent collected the sum of $109,296 under this proviso of the written contract, of which 3 per cent. amounts to $3,296. It is this sum which, plus interest in the sum of $29.66, makes up item 2 of her claim.

■ The trial court allowed the item one (1) of the Harrigan claim in the total sum of $2,275, being for 91 machines at $25 each. Since the appellee as administrator of the estate of Fr. Aull took no appeal from so much of the judgment as allowed this item of the claim in the sum indicated, we need only concern ourselves with claimant's complaint that the items should have been allowed in a substantially larger amount. Indeed, her counsel claim the allowance should have been for 149 machines at $25 each, or the sum of $3,775. It seems that according to the testimony there were some machines for which she claimed the $25 royalty manufactured prior to the written contract of November 4, 1946, on which she based her claim as filed.

To have permitted her to recover for these machines would have operated as violation of the statute of nonclaim in awarding recovery for a claim unseasonably filed. Nor could the claimant be aided by amendment. Gildersleeve v. Atkinson, 6 N.M. 250, 27 P. 477. If otherwise admissible and aside from her own testimony, the proof as to machines manufactured prior to the date of the written contract had doubtful corroborative value. Since the records upon which she relied showed manufacture of only 91 machines after date of the written contract upon which she based the claim filed, the trial court properly limited recovery to them.

■ There was no error in the trial court's action in rejecting item 2 of the Harrigan claim. Unless a mere showing of the gross income from leased machines had been deemed satisfactory proof of "net monthly income of machines manufactured and leased commercially," then the trial court properly rejected this item of the claim for failure of proof.

Finding no error, the judgment of the district court is in all things affirmed.

It is so ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

COORS, J., did not participate.