393 P.2d 438

Arthur FREDERICK, Jr., Plaintiff-Appellant
and Cross-Appellee,

v.

YOUNGER VAN LINES and St. Paul Fire &
Marine Insurance Company, Defendants-
Appellees and Cross-Appellants.

No. 7404.

Supreme Court of New Mexico.

June 29, 1964.

William J. Heck, Hobbs, for appellant.

Girand, Cowan & Reese, Hobbs, for appellees.

MOISE, Justice.

By this appeal, plaintiff-appellant presents for review two questions. He first argues that there is an absence of substantial evidence to support the findings and conclusions of the trial court that, when injured, plaintiff had deviated from his course and by virtue thereof the accident resulting in his injuries did not arise out of and in the course of his employment with defendant-employer who together with his workmen's compensation insurance carrier are the appellees. Next he asserts there is no substantial evidence to support the trial court's finding that the plaintiff suffered no disability to his body as a whole resulting from said accident.

Defendant, in turn, complains that the court's finding that plaintiff is suffering 80% loss of vision in the right eye as a result of the accident is not supported because of an absence of expert medical testimony establishing the causal connection between the accident and loss of sight as a medical probability as required by § 59–10–13.3(B), N.M.S.A.1953.

At the close of plaintiff's case the court sustained a motion by defendant for judgment, stating that plaintiff was not entitled to recover "even assuming that his story is true and that he was instructed to take 285 into Denver, which I do not agree was proven," and further:

"But, even assuming that you were attempting to follow the boss's instructions by going that route and went over the other way because of the detour sign, I see no reason why as you got back to Raton you elected to take a much longer route to come to Hobbs. I see no reason for your having done so. I think you deviated materially from your course and were not injured while you were in the course of your employment."

The court thereafter made the following findings and conclusions which are here under attack:

"2. That the plaintiff's claimed injuries did not result from an accident arising out of or in the course of his employment by Younger Van Lines.

"3. The Court finds that the plaintiff suffered no disability to his back or body as a whole resulting from said accident.

"4. That plaintiff prior to the day of the accident was employed by defendant Younger Van Lines as a driver to drive a van to Denver, Colorado, unload his cargo and return to Hobbs, New Mexico; and that on his return trip he materially deviated from the direct course to Hobbs. That said deviation in no way furthered defendant Younger Van Lines' business and that said deviation resulted in plaintiff's traversing a more hazardous road to the place where the accident occurred. That the accident occurred solely as a result of the deviation which was of no benefit to the employer but was detrimental to defendant Younger Van Lines and resulted in loss of time and wages during such deviation as well as the damage to the employer's property.

"5. That the only disability from which plaintiff suffers as a result of such accident is a loss of vision in the right eye equivalent to 80% thereof." Conclusion of Law No. 1.

"The Court concludes that the plaintiff's claimed injuries and the accident described in the Complaint did not arise out of or in the course of plaintiff's employment by the defendant Younger Van Lines and that the plaintiff cannot recover herein."

We recognize that under Rule 41 (b) (§ 21–1–1(41) (b), N.M.S.A.1953) a trial judge, when ruling on a motion to dismiss made at the close of plaintiff's case, is not required to view plaintiff's testimony together with all reasonable inferences therefrom in its most favorable aspect for plaintiff, but rather that the court weighs the testimony and applies its judgment thereto. Hickman v. Mylander, 68 N.M. 340, 362 P.2d 500. We applied the rule in Montano v. Saavedra, 70 N.M. 332, 373 P.2d 824, and very recently in Blancett v. Homestake-Sapin Partners, 73 N.M. 47, 385 P.2d 568, both being workmen's compensation cases.

In this review, in which we are called upon to consider if the findings are supported by substantial evidence, we are bound to view the evidence in its most favorable light to support the court's findings. Blancett v. Homestake-Sapin Partners, supra.

Looking at the findings quoted above, it seems quite apparent that the court was attempting to state that under the facts recited in finding 5, plaintiff suffered an 80% loss of vision in his right eye, but no disability to his back or to his body as a whole. Finding 2 to the effect that the injuries did not result from an accident arising out of or in the course of plaintiff's employment with defendant-employer, is more properly a conclusion of law. It is repeated in conclusion No. 1, quoted above.

At the same time, we are faced with the problem of determining if the court's action in totally disregarding plaintiff's testimony denies to the court's findings that support necessary under our rules.

Plaintiff testified that before leaving on the trip to Denver with a vanload of furniture, he discussed the route to be followed with Mr. Oldham, defendant's dispatcher and manager, and that they pencilled the same on a map. It was understood that plaintiff would follow Highway 18 from Hobbs to Tatum, then Highway 380 to Roswell, and then Highway 285 to Denver. Upon arriving at the place where Highway 285 and Highway 64 intersect near Espanola, there was a detour on 285 and plaintiff then followed Highway 64 to Taos, then to Raton, and from there north to Denver. On his return trip he was retracing his path as he stated was customary when a return load is not to be picked up. In a phone conversation before leaving Denver, plaintiff testified Mr. Oldham told him to return "straight to Hobbs." Defendants argue that this amounted to an instruction to take the most direct and

shortest route. However, plaintiff argues that nothing more was meant than that plaintiff should return directly to Hobbs without any side trips to pick up another load, and the route chosen was no longer or slower than going on the most direct route where some poorer roads would be encountered. Plaintiff's testimony also discloses that some hour and a half was spent stopped by a stream, and that only some 122 miles had been traveled on the day of the accident (it does not appear what time of day it happened except that it was after lunch), and that most of this was in a westerly direction, whereas Hobbs was south. At the time of the accident, which occurred some eleven miles before reaching Taos and resulted in injuries to his head, face, right eye, neck and back, and a moderately severe concussion, he was proceeding in the truck to this destination. The record discloses nothing to the contrary.

In this state of the record is there support in the evidence for the court's finding that plaintiff had "materially deviated from the direct course to Hobbs"; that the deviation did not further, but was detrimental to defendant's business and that the deviation resulted in plaintiff's traveling a more hazardous road and was the sole cause of the accident?

We do not perceive in § 21–1–1 (41)(b), N.M.S.A.1953 any more right on the part of the trier of the facts to disregard all evidence and find contrary thereto at the close of plaintiff's case than at the close of all the evidence. Certainly, at the close of all the evidence the court is required to have support therein for any findings made by it.

The rules applicable when weighing uncontradicted testimony were reviewed by this court at length in Medler v. Henry, 44 N.M. 275, 101 P.2d 398, from which we quote the following:

"From the New Mexico cases discussed, we believe the rule in this jurisdiction to be that the testimony of a witness, whether interested or disinterested, cannot arbitrarily be disregarded by the trier of the facts; but it cannot be said that the trier of facts has acted arbitrarily in disregarding such testimony, although not directly contradicted, whenever any of the following matters appear from the record:

"(a) That the witness is impeached by direct evidence of his lack of veracity or of his bad moral character, or by some other legal method of impeachment.

"(b) That the testimony is equivocal or contains inherent improbabilities.

"(c) That there are suspicious circumstances surrounding the transaction testified to.

"(d) That legitimate inferences may be drawn from the facts and circumstances of the case that contradict or cast reasonable doubt upon the truth or accuracy of the oral testimony."

In the later case of Brown v. Cobb, 53 N.M. 169, 204 P.2d 264, we again reiterated that, generally speaking, uncontradicted evidence on a material issue could not be disregarded by a court, and again recognized an exception where suspicious circumstances were present or contradictory inferences arose so as to cast some reasonable doubt on the testimony. In Waters v. Blockson, 57 N.M. 368, 258 P.2d 1135, we recognized that the rule that the sworn testimony had to be accepted as true was subject to exceptions, but pointed out that before a finding which disregarded the uncontradicted evidence could be upheld, facts or circumstances which impair or reflect on the accuracy of the testimony must be present. Mracek v. Dunifon, 55 N.M. 342, 233 P.2d 792, is generally to the same effect, stating that uncontradicted testimony may not be arbitrarily rejected, but pointing out that "contradiction may be circumstantial as well as direct." We think it clear, however, that evidence which is unimpeached and uncontradicted, either by direct testimony, contradictory testimony, suspicious circumstances, or adverse inferences may not be unceremoniously cast aside and disregarded, and findings diametrically opposed thereto lack support.

In re Williams' Will, 71 N.M. 39, 376 P.2d 3; Morris v. Cartwright, 57 N.M. 328, 258 P.2d 719; Medler v. Henry, supra.

It is next important that we review the cases to determine what conduct on the part of an employee is such as will take his actions out of the protection of the workmen's compensation laws as not having arisen out of and in the course of his employment.

In McKinney v. Dorlac, 48 N.M. 149, 146 P.2d 867, this court explained what was meant by "arising out of and in the course of employment," by adopting the following language:

" 'The words "in the course of [his] employment" relate to the time, place, and circumstances under which the accident takes place. An accident arises in the course of the employment when it occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto.' Hama Hama Logging Co. v. Dept. of Labor, etc., 157 Wash. 96, 288 P. 655, 657. Case of Fournier, 120 Me. 236, 113 A. 270, 272, 23 A.L.R. 1156."

Also see Parr v. New Mexico State Highway Department, 54 N.M. 126, 215 P.2d 602, a case involving a workman killed at night while in a car furnished by employer, from

which we quote the following pertinent language:

"* * * We think it was not unreasonable for the court to conclude the deceased was in the course of his employment at the time he received the injuries resulting in his death. McKinney v. Dorlac, 48 N.M. 149, 146 P. 2d 867; Southwestern Portland Cement Co. v. Simpson, 10 Cir., 135 F.2d 584; Doyle's Case, 256 Mass. 290, 152 N.E. 340; Souza's Case, 316 Mass. 332, 55 N.E.2d 611; Dauphine v. Industrial Accident Commission, 57 Cal. App.2d 949, 135 P.2d 644. The mere fact that while in Farmington, his presence there occasioned by the announced purpose of visiting the La Plata project, he called on his desperately ill father at the hospital a few hours before the latter's death the following morning, would not deny his trip character as in the course of his employment, if in fact, as the court's finding implies, he had resumed travel on the journey which occasioned the trip. Dauphine v. Industrial Accident Commission, supra."

The rule as to when deviation from the shortest route removes an employee from the course of his employment is stated by Larson in 1 Workmen's Compensation Law, § 19,50, as follows:

"Taking a somewhat roundabout route, or being off the shortest line between the origin and destination, does not in itself remove the traveller from the course of employment; it must be shown in addition that the deviation was aimed at reaching some specific personal objective. * * *"

The rule as stated has ample support in the cases. See Southwestern Portland Cement Co. v. Simpson (10 Cir., 1943) 135 F. 2d 584, a case arising under the New Mexico Workmen's Compensation Law. Also see London Guarantee and Accident Co. v. Herndon, 81 Ga.App. 178, 58 S.E.2d 510; Sanford v. A. P. Clark Motors, Inc., (Fla. 1950), 45 So.2d 185; Ortega v. Ed Horrell & Son, 89 Ariz. 370, 362 P.2d 744; Employers' Liability Assurance Corporation, Ltd. v. Industrial Commission, 147 Colo. 309, 363 P.2d 646; although not a workmen's compensation case, compare Massey v. Beacon Supply Company, 70 N.M. 149, 371 P.2d 798.

Nothing said in McKinney v. Dorlac, supra, is in any sense to the contrary. The same is true of Utter v. Marsh Sales Company, 71 N.M. 335, 378 P.2d 374, and Walker v. Woldridge, 58 N.M. 183, 268 P.2d 579. Parr v. New Mexico State Highway Commission, supra, is in accord. Although Campbell v. Schwers-Campbell, 59 N.M. 385, 285 P.2d 497, determined that the evidence did not support a finding that the employee's death occurred as a result of his employment, it is in no sense contra.

■ We find nothing in the evidence upon which to base the finding that plaintiff had deviated from his route. True, he was not on the shortest path between Denver and Hobbs, but there is not one word in the proof to establish this as a deviation. Possibly the maps in evidence established the route followed as more hazardous than the more direct route because it is clear that it passed through mountainous terrain, but neither this fact nor the possibility that it would require more time if such was the fact would establish a deviation. There is no proof that plaintiff was proceeding anywhere except to his destination in Hobbs when the accident happened, or that he was doing anything not in furtherance of his employer's business. Under the rules reviewed above, finding No. 4 lacks support. It is based on guesswork and cannot be sustained.

■ The same can be said concerning finding No. 3. Both Dr. Bell and Dr. Rader, who were called as witnesses by plaintiff, testified concerning back injuries suffered by plaintiff in the accident. The only testimony to the contrary is that of Dr. Autry who stated that upon discharge from the hospital he could find nothing in the X-rays that indicated any injury to plaintiff. The record discloses that Dr. Autry was a witness for defendants, called out of order. In testing the sufficiency of the proof and in weighing the evidence, the testimony of defendants' witness taken out of order should be disregarded. We so held in Olivas v. Garcia, 64 N.M. 419, 329 P.2d 435, and although that case, insofar as it held that the motion to dismiss was to be treated as a demurrer to the evidence, is no longer controlling, Hickman v. Mylander, supra, the rule as to the consideration to be given to evidence of the defendant introduced out of order is not changed. To hold otherwise would inject new elements into a trial and would deny fair weight to plaintiff's proof. Compare Carney v. McGinnis, 63 N.M. 439, 321 P.2d 626, and Merchants Bank v. Dunn, 41 N.M. 432, 70 P.2d 760.

■ We would observe in passing that even if Dr. Autry's testimony were considered by the court when ruling on the motion, we doubt that it would support a finding of no disability to plaintiff's back or body as a whole. Some ten days after the accident, Dr. Autry hospitalized plaintiff and kept him in traction for a week. After that time he released him from the hospital and back to the care of his doctor in Hobbs, but not back to work, and said nothing more in his testimony than that at that time he found nothing in the X-rays that indicated any injury, and that at the time of trial he was of the opinion there was no disability of the spine. Certainly, there must have been some reason for the hospitalization and traction and some disability from the date of the accident to the date of release from the hospital.

**328**

■ We next examine defendants' cross-appeal or points made under Supreme Court Rule 17(2) (§ 21–2–1(17) (2), N.M.S.A. 1953). We would first observe that defendant suggest some confusion concerning the proper and timely application of Rule 17(2) and Rule 7(2) (§ 21–2–1(7) (2), N.M.S.A. 1953).

In the first place, we would point out that Rule 7(2) contemplates a cross-appeal to review rulings of the court adverse and prejudicial to appellee, regardless of the outcome of the appeal proper.

■ On the other hand, Rule 17(2) permits review of rulings adverse to appellee which need be considered only in the event the appeal is found to have merit, but because of which it is contended the case should nevertheless be affirmed. To obtain a review under Rule 17(2) no notice of cross-appeal is required, but merely the making of a point in the appellee's brief of the claimed error together with argument thereon. Under the circumstances here present, we consider the issue raised by appellee to be a proper one under Rule 17(2), and consequently no order allowing cross-appeal or notice of cross-appeal was required.

■■ Appellee complains that finding No. 5, quoted above, is not supported by substantial evidence because defendants denied that the disability to plaintiff's eye was the natural and direct result of the accident and that plaintiff failed to establish the causal connection by expert medical testimony as required by § 59–10–13.3(B), N.M.S.A.1953.

Dr. Bell, the general practitioner who treated plaintiff, testified as follows:

"Q. Did you have an occasion at any time during the course of your treatment of the plaintiff to test his eyes for his visual acuity?

"A. Since the injury?

"Q. Yes.

"A. Yes, sir. The left eye was 20/20 which was considered normal, and the right eye was 20/200ths.

"Q. Is that considered to be a fairly substantial loss of effectiveness in that member?

"A. Yes, about all you can say is he has at the present time light perception only.

"Q. What percentage of disability is that to the eye? The loss of vision, that is?

"A. Eighty percent."

Thereafter on motion of defendants the court struck the testimony of Dr. Bell in which he expressed his opinion concerning the causal connection because he stated in answer to a question by the court that he made "no pretentions to be qualified to testify as to diseases and troubles of the eye otherwise than a general practitioner would." This being the only expert testimony concerning causal connection, if the

court was correct in striking the same, defendants' position would undoubtedly be correct. Montano v. Saavedra, supra; Yates v. Matthews, 71 N.M. 451, 379 P.2d 441.

It is plaintiff's position that the court should not have stricken the testimony of Dr. Bell, and with this we agree. True, he was not an ophthalmologist, but he was a licensed general practitioner of medicine whose qualifications as such were admitted by defendants and his testimony concerning causal connection was admitted without objection. That he was not a specialist does not go to the admissibility of the evidence elicited from him nor to its sufficiency to support a finding based thereon, but rather to the weight to be accorded it. We so held in Williams v. Skousen Construction Company, 73 N.M. 271, 387 P.2d 590, where we upheld a finding based upon the testimony of a general practitioner who did not claim to be an expert internist as to causal connection of a myocardial infarction and claimant's work, even though testimony was present from a well-qualified specialist in internal medicine. It follows that the testimony should not have been stricken, and that it would have been sufficient to support finding No. 5. There was error in the court's action in striking the quoted testimony.

In view of the fact that the case must be reversed for the matters raised in plaintiff's appeal, and the further fact that the judge who tried the case has retired from the bench, the case is reversed and remanded with instructions to grant a new trial.

It is so ordered.

CARMODY and NOBLE, JJ., concur.