32980.   LONDON GUARANTEE & ACCIDENT CO. *et al.*
*v.* HERNDON.

DECIDED MARCH 16, 1950.

*Smith, Partridge, Field, Doremus & Ringel,* for plaintiffs in error.

*B. D. Murphy, Newell Edenfield, O. J. Coogler Jr.,* contra.

TOWNSEND, J.   (After stating the foregoing facts.)   From the stipulated facts and the evidence as disclosed by the record, the

Board of Workmen's Compensation were authorized to find facts substantially: that the claimant is the widow of the deceased Donald W. Herndon; that he was also the father of Saranne Herndon, a minor child approximately 6 years of age at the time of the death; that he was a soil cement engineer of the employer and his duties consisted in helping engineers in the preliminary retesting of soils and working up specifications on the proper content and proper cement content for such soils; that he worked with contractors and engineers who were employed by contractors in this type of work and his duties generally were designed to help promote the sale and use of cement; that he traveled in several southeastern states, including Florida; that during February, 1949, he was sent to Daytona Beach, Florida, where he continued to work for the employer until March 3, 1949; that his salary was $400 per month in addition to his actual traveling and living expenses; that he had no particular hours and was subject to the performance of the duty for which he was employed at any and all hours; that his customary practice was to make out his reports of the day's activities at night after the evening meal; that on March 3, 1949, and for some time prior thereto his wife and child were staying with him on this location and they were living together in an apartment in Daytona Beach; that this apartment was not equipped for the preparation of meals, and on this particular evening Herndon drove his wife and daughter over to Daytona some distance away, where there was available a restaurant which they customarily patronized; that after this meal and upon returning to Daytona Beach, instead of using the regular highway to their cottage, he drove down the beach road; that he used this route both as a means of getting back home where he could complete his day's work and to view the beauty of the ocean along the beach in the early twilight; that along this route were turnouts at increasingly distant intervals where cars using the beach road could turn back toward the main highway; that either inadvertently or intentionally, Herndon passed the turnout nearest the location of his cottage and did not come to another turnout until some distance down the beach, the exact distance not being clear from the evidence; that, however, upon reaching what appeared to be another turnout, and it being agreed between the parents that it

was time to put their child to bed, he undertook to use this apparent turnout to get back to the highway; that his car became stuck in the sand at this point, which was at a place believed by Herndon to be in danger of approaching high tide; that he asked his wife and daughter to try to find some lumber or other debris along the beach that he could put under the wheels of the car and use this traction to get out of the sand; that in the meantime he had used the bumper jack and raised the back end of the car; that while his wife and daughter were looking for something to put under the wheels he was working under the car, and upon their return they found the car had fallen and pinned him beneath it, and that this accident resulted in his death.

The board was also authorized to find that the car was the property of the employer and that he was authorized to use it in the manner in which it' was being used on the occasion in question; also that it was his duty to take care of the car as a part of the property of his employer which was placed in his control. The burden is on the claimant to show that the deceased at the time of his death was engaged in the service of his employer. The evidence fails to show why he drove down the beach as far as he had, past the nearest turnout to his apartment, except there is some evidence on the part of the claimant herself to the effect that this journey was made along the beach road almost every evening after dinner for their pleasure and entertainment. So long as it was on the way to the apartment where he was to complete his day's work, it did not matter which route they took, whether the beach route or the highway route. Nor did it matter that the beach route was elected for the pleasure and entertainment of the claimant, her husband and daughter. In *Hartford Accident & Indemnity Co.* v. *Welker*, 75 *Ga. App.* 594 (44 S. E. 2d, 160), it is stated: "There is no requirement in our law that the employee at the time of the injury must have no objective other than the business of the employer. It is sufficient if the injury is occasioned by an accident arising out of and in the course of the employment." The fact that the route chosen was the more pleasant one, therefore, does not in itself in any way negative the right to compensation.

Nor does the hour at which the accident happened, and the fact that he was returning from a restaurant at the time, appear

to be of any importance in this case. The employee in this case did not belong to that majority, the division of whose time between personal requirements and those of the employer is strictly adhered to. As was stated in *Thornton v. Hartford Accident & Indemnity Co.*, 198 *Ga.* 786 (32 S. E. 2d, 816): "By the very nature of his work, a traveling salesman is not usually restricted to working on a schedule of hours. His employment is broader in scope than that of ordinary employees; his hours are more irregular, and usually longer, than those of general employees working in a fixed location. . . Such an employee is in continuous employment day and night. . . Activities, the performance of which are necessary to his health and comfort, while in a sense personal to himself, are nevertheless incidents of his employment and acts of service therein within the meaning of the Workmen's Compensation Act."

It may be conceded under the facts before us, however, that if Herndon proceeded intentionally past the turnout to his temporary home, where he was to finish his day's work, and proceeded intentionally a distance down the beach for his personal pleasure alone, such acts would constitute a temporary departure from his employment. Whether or not he found himself at some distance below the proper turnout intentionally, rather than by inadvertence, does not conclusively appear from the evidence. In any case it does not change the issues, for the moment Herndon stopped his automobile and attempted to turn back, for the purpose, among others, of making out his daily reports, and of placing his employer's automobile, which had been entrusted to him, in a safe place for the night, he again resumed the duties of his employment, and was so engaged when he met his death. See *Wicker v. Fidelity & Casualty Co.*, 59 *Ga. App.* 521, 524 (1 S. E. 2d, 464); *Glens Falls Indemnity Co. v. Sockwell*, 58 *Ga. App.* 111 (197 S. E. 647); *Atlanta Furniture Co. v. Walker*, 51 *Ga. App.* 781 (181 S. E. 498); *Parks v. Maryland Casualty Co.*, 69 *Ga. App.* 720 (26 S. E. 2d, 562). After going as far as he intended to go during his ride down the beach, which was still in the general proximity of the place where he was employed to be and at a time he was employed to be in that general proximity, Herndon turned around and tried to return to the place where he was to complete his day's work in accordance with his usual

custom. It follows that immediately upon thus turning about he resumed his employment and was thus engaged at the time of his death.

Nothing to the contrary is held in *United States Fidelity & Guaranty Co.* v. *Skinner,* 188 *Ga.* 823 (5 S. E. 2d, 9). In that case the employee was on his way to a resort beach for purposes of personal entertainment at the time of his death, had left the town to which he had been sent on company business and was going to another community in which the company had no business whatever. The facts do not apply to a case such as the one before us.

The judgment of the Superior Court of Fulton County, affirming the award of the State Board of Workmen's Compensation, was without error.

*Judgment affirmed.* *MacIntyre, P. J., and Gardner, J., concur.*