Argued and submitted February 1, reversed; administrative law judge's order
reinstated October 2, petition for review denied December 17, 2002

(335 Or 114)

In the Matter of the Compensation of
Dennis Sosnoski, Claimant.

Dennis SOSNOSKI,
*Petitioner,*

*v.*

SAIF CORPORATION
and Monaco Coach Corp.,
*Respondents.*

00-00867; A112357

55 P3d 533

Christopher D. Moore argued the cause for petitioner. With him on the briefs was Malagon, Moore & Jensen.

David L. Runner argued the cause and filed the brief for respondents.

Before Armstrong, Presiding Judge, and Kistler and Brewer, Judges.

BREWER, J.

.

## BREWER, J.

Claimant seeks review of a Workers' Compensation Board order reversing an administrative law judge's (ALJ's) order that set aside employer's denial of compensability for claimant's neck and low back injury. The issue is whether claimant, a traveling employee, was engaged in a distinct departure from his employment on a personal errand when he was injured in a motor vehicle accident. Because the relevant facts are not in dispute, we review for errors of law. ORS 656.298(7); ORS 183.482(8); *Proctor v. SAIF*, 123 Or App 326, 860 P2d 828 (1993). We reverse the board and reinstate the ALJ's order setting aside employer's denial of compensability.

We summarize the facts found by the board together with other undisputed evidence in the record. Claimant began working for employer in 1997. In 1999, he was a technical advisor, responsible for solving problems with the employer's products and helping customers find service and repair facilities across the country. Claimant's job required out-of-state travel. On November 15, 1999, claimant flew to Texas as part of his employment. He was to work at Integrity Motor Coach (Integrity) in Lewisville, Texas. Employer paid for his air transportation, rental car, and hotel.

Claimant worked at Integrity's Lewisville facility on November 15 and then checked into a hotel in Lewisville. He also worked at the facility on November 16 from 7:50 a.m. to 5:30 p.m. He went back to his hotel and spent about an hour relaxing at the pool. Claimant then went to his room to watch television and fell asleep. He woke up about 9:30 p.m. and drove the rental car to get something to eat.

Claimant drove to Carrolton, a town about six miles from Lewisville, and arrived at a restaurant about 10:30 p.m. He testified that he had two beers with his dinner. He also testified that employer knew of and acquiesced in the consumption of alcohol by its traveling employees. Claimant struck up a conversation with two persons at the restaurant as they were watching television. After 1:00 a.m., claimant gave one of the persons a ride back to his apartment in Carrolton. The apartment was located about three or four

miles from the restaurant. Claimant testified that he had a beer there and watched television. He left the apartment at about 1:30 a.m. to return to his hotel in Lewisville.

On his way back to the hotel, while driving on a service road parallel to the freeway, claimant was stopped by a Carrolton police officer. The officer recorded that claimant was traveling 84 miles per hour in a 35 mile per hour zone. The officer arrested claimant at 2:30 a.m. on November 17 for driving while intoxicated. Employer's written policy forbids employees from operating a company vehicle while under the influence of intoxicants.

Claimant was held in jail until 6:00 or 7:00 p.m. on November 17, when he was released on bail. An employee from Integrity paid the bail bond and drove claimant to an impound lot to pick up the rental car. At 8:40 p.m., while en route from the impound lot to his hotel, claimant was involved in a motor vehicle collision. Claimant was taken to the hospital by ambulance and was released. He testified that he had neck and lower back pain. Claimant returned to his hotel room at about midnight. He then returned to Oregon on November 20.

Employer denied claimant's workers' compensation claim on the ground that claimant's injury did not arise out of or occur within the course of his employment. Claimant requested a hearing. After the hearing, the ALJ found that, even if claimant had departed from his employment on a personal errand that included alcohol consumption, driving at a high rate of speed, and being arrested and detained, that personal errand ended when claimant resumed possession of the rental car and began driving back to his hotel. The ALJ found that there was no ongoing errand at the time of claimant's accident and that claimant's return to the hotel was reasonably related to his status as a traveling employee. As a result, the ALJ overturned employer's denial of compensability. The board reversed the ALJ's order and reasoned:

> "We find that claimant's activity at the time he was injured was not reasonably related to his status as a traveling employee. We conclude that claimant's arrest, his detention in jail, the retrieval of the rental car from the impound lot and the return journey were outside the course

and scope of his employment and those activities were unrelated to his status as a traveling employee. *Compare [Sabin Corp. v.] McBride*, 134 Or App 321[, 894 P2d 1261 (1995)] (the claimant's personal bank business required a diversion of three to five blocks from her route home and it took about five minutes; the claimant's personal errand was not so unrelated to her travels as to be excluded from coverage). We find that claimant's entire episode as summarized above had no work connection. Furthermore, those activities constituted a distinct departure from his employment such that claimant was no longer in the course of his employment. Claimant's accident occurred after a nonbusiness delay of about 18 hours, from the time of his arrest at 2:30 a.m. on November 17, 1999 to the time of the accident at 8:40 p.m. on the same day.

"In reaching this conclusion, we reject claimant's argument that, even if there had been a hiatus, he was returning to normal activities in an expeditious manner, advancing the employer's interest when the accident occurred. We are not persuaded that claimant's deviation had ended just because he was returning to the hotel. Claimant was injured at a place he would not have been, but for his arrest, temporary incarceration and impoundment of his car. In sum, we conclude that claimant was injured while he was engaged in a distinct departure that took him out of the course of his employment."

Claimant asserts that the board erred in concluding that his injury was not compensable, because he had not distinctly departed from the course of employment or, alternatively, because he was injured while "returning to work expeditiously following a hiatus." He also contends that the board's decision is not adequate for judicial review, because it provided no reasoning for its contrary conclusions. We summarily reject the latter argument. The board adequately explained its decision for purposes of review. The decisive question, rather, is whether it erred in concluding that claimant was injured while engaged in a distinct departure on a personal errand.

For an injury to be compensable under Oregon's workers' compensation law, it must "arise out of" and be "in the course of" employment. ORS 656.005(7)(a). We use a unitary work-connection test in which the "arising out of" and "in

the course of" elements are both part of a single inquiry, which is whether the relationship between the injury and the work is sufficient to make the injury compensable. *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994).

■ When travel is part of employment, " 'the risk of [injury during activities necessitated by travel] remains an incident to the employment even though the employee may not actually be working at the time of the injury.' " *PP&L v. Jacobson*, 121 Or App 260, 263, 854 P2d 999, *rev den*, 317 Or 583 (1993) (quoting *SAIF v. Reel*, 303 Or 210, 216, 735 P2d 364 (1987)). A traveling employee is continuously within the course and scope of employment while traveling, except when the person has "engaged in a distinct departure on a personal errand." *Proctor*, 123 Or App at 330; *Slaughter v. SAIF*, 60 Or App 610, 654 P2d 1123 (1982). In determining whether a "distinct departure" occurred, we consider whether the activity that resulted in the injury was "reasonably related" to the employee's travel status. *McBride*, 134 Or App at 325.

In *Slaughter*, a case on which claimant relies, we held that a long haul truck driver did not engage in a distinct departure on a personal errand when he chose to pass the time during a forced layover between trips by drinking in a local tavern, and was injured in a fight with other tavern customers. *Slaughter* distinguished *Hackney v. Tillamook Growers*, 39 Or App 655, 593 P2d 1195, *rev den*, 286 Or 449 (1979), where we held that a traveling employee driver engaged in a distinct departure on a personal errand by disregarding a dispatcher's instructions to leave Florida and drive to South Carolina and, instead, remained for five and one-half hours in a motel bar, drinking and watching television. He broke his arm while arm wrestling. In *Slaughter*, we said that "*Hackney* is not controlling, because a 'personal errand' was found there, in large part because of Hackney's delay in leaving Florida. The perceived disregard of the dispatcher's directions made the personal errand 'distinct.' " *Slaughter*, 60 Or App at 614 (citation omitted).

■ In *Proctor*, the claimant was injured when he left a conference location to work out at an athletic club. In holding that the injury was compensable, we adhered to the course set in *Slaughter*. We said:

"[An] [e]mployer need not approve a traveling employee's travel to or participation in an after-work relaxation activity. A traveling employee may satisfy a physical need for recreation even if the job does not cause stress, and even if the employee chooses an activity that is not related to work. As the cases show, most traveling employees relax through activities that have little relationship to work."

*Proctor*, 123 Or App at 331. As we indicated in *Proctor*, the relevant inquiry is whether the employee's activity at the time of injury

"had a work connection, and whether the activity violated employer directives or was

" 'so inconsistent with the purpose of his trip * * * as to constitute an abandonment of his employment or such a deviation therefrom as should have caused us to conclude that he was no longer in the course of his employment.' "

*Id.* at 332 (quoting *Slaughter*, 60 Or App at 615 n 4).

Finally, in *McBride*, we concluded that a traveling employee's five-minute personal errand to a bank, during which she was injured in a motor vehicle collision, was not a distinct departure on a personal errand because it was "so transitory and slight as to be disregarded as insubstantial." 134 Or App at 326.

The foregoing cases provide some helpful insight into the factors that determine whether a traveling employee's nonwork activities are reasonably related to employment and, therefore, do not constitute a distinct departure on a personal errand. A traveling employee is considered to be in the course of employment while engaged in personal activities such as eating and sleeping but will not be covered for injuries that occur during personal activities that are not reasonably related to the claimant's travel status. *Slaughter*, 60 Or App at 615. Activities that are reasonably related to the claimant's travel status are those activities that an employer might reasonably approve of or contemplate that a traveling employee will engage in. *McBride*, 134 Or App at 325. In determining whether the traveling employee's injury is

compensable, the question is whether *the activity that resulted in the injury* was reasonably related to the employee's travel status. Coverage will not be provided if the activity was inconsistent with the business trip's purpose or the employer's directives. *Proctor*, 123 Or App at 333.

■■■ The board here determined that claimant's decision to travel six or seven miles to find a place to eat dinner was reasonable. The board concluded, however, that claimant's subsequent activities were a departure from his employment, not reasonably related to his status as a traveling employee, and that, at the time of the injury, claimant had not yet returned to his normal employment activities, because he was injured at a place he would not have been "but for" his deviation from employment. The board thus implicitly determined that the activity that resulted in claimant's injury was the deviation from his employment. We disagree with that analysis. As our cases demonstrate, the correct focus is on the nature of *the activity at the time of injury*. If the activity at the time of the injury is an activity that the employer could reasonably anticipate or expect of a traveling employee, then the activity is reasonably related to the employee's status as a traveling employee and is not a departure.

The question here is whether claimant's activity at the time of the injury had a work connection, that is, whether it was an activity that employer reasonably could expect of a traveling employee. At the time he was injured, claimant had picked up his rental car and was driving back to his hotel, following a coworker. It is agreed that he was a reasonable distance from the hotel and was not under the influence of intoxicants. He had no personal objective in mind. In our view, that activity was one that employer could reasonably expect of claimant. It matters not whether claimant had *earlier* departed from his employment on a distinctly personal errand; that departure ended when claimant's activities again became reasonably related to his status as a traveling employee and not inconsistent with the business trip's purpose or employer's directive. *McBride*, 134 Or App at 326.

We accordingly conclude that the board erred in determining that claimant's injury sustained in the motor vehicle collision was not compensable.

Reversed; administrative law judge's order reinstated.