S06G0891. RAY BELL CONSTRUCTION COMPANY et al.
v. KING.
(642 SE2d 841)

BENHAM, Justice.

Howard King, a resident of Florida, lived in a Fayetteville, Georgia, apartment provided by his employer, appellant Ray Bell Construction Company, while he was employed as a superintendent of a construction project in Jackson, Georgia. King died in Georgia on Monday, August 12, 2002, from injuries he had sustained in a vehicular collision the previous day that occurred in Georgia while King was driving a truck provided by his employer as a term and condition of employment. When King's former wife sought dependency benefits for King's dependent minor child, the employer and its insurer controverted the claim on the ground that King's death did not arise out of and in the course of his employment. The administrative law judge awarded benefits to the child, based in part on the doctrine of "continuous employment," and the State Board of Workers' Compensation affirmed the ALJ's decision. The Superior Court of Monroe County affirmed the decision, as did the Court of Appeals in *Ray Bell Constr. Co. v. King*, 277 Ga. App. 144 (625 SE2d 541) (2006). We granted the employer's petition for a writ of certiorari because we

---

were concerned whether the Court of Appeals had applied the two-pronged test for a compensable injury reiterated in *Mayor &c. of Savannah v. Stevens*, 278 Ga. 166 (1) (598 SE2d 456) (2004): the injury by accident must arise in the course of employment and out of the course of employment, "two independent and distinct criteria. . . ." See also OCGA § 34-9-1 (4).

"The Workers' Compensation Act in Georgia is intended to have broad application so as to cover a wide variety of injuries and the pain and suffering incident to such injuries." *Hennly v. Richardson*, 264 Ga. 355-356 (1) (444 SE2d 317) (1994). It is "a humanitarian measure which should be liberally construed to effectuate its purpose." *City of Waycross v. Holmes*, 272 Ga. 488, 489 (532 SE2d 90) (2000). See also *New Amsterdam Cas. Co. v. Sumrell*, 30 Ga. App. 682, 689 (118 SE 786) (1923) (The Workers' Compensation Act "should be liberally and broadly construed to effect [its] beneficent purpose.").

> In reviewing a workers' compensation award, both th[e appellate] court and the superior court must construe the evidence in the light most favorable to the party prevailing before the appellate division [of the State Board of Workers' Compensation]. [Cit.] "It is axiomatic that the findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding. . . ." [Cit.]

*South Ga. Timber Co. v. Petty*, 218 Ga. App. 497, 498 (462 SE2d 176) (1995). See also *Young v. Columbus Consolidated Govt.*, 263 Ga. 172 (1) (430 SE2d 7) (1993). This Court is without authority to substitute itself as a factfinding body when reviewing a workers' compensation decision. *Hallisey v. Fort Howard Paper Co.*, 268 Ga. 57 (1) (484 SE2d 653) (1997); *Southwire Co. v. George*, 266 Ga. 739, 742 (470 SE2d 865) (1996).

The appellate division of the State Workers' Compensation Board determined King suffered a compensable injury because, at the time the injury was sustained, King was an employee in continuous employment driving an employer-provided vehicle and had concluded a personal mission and resumed the employer's business because he was driving to either his job site or to his employer-provided housing. In light of the appellate division's statement in the disjunctive of its finding regarding King's destination at the time of injury, in reviewing the appellate division's award we examine whether King was covered if he were driving to the job site and if he were returning to his employer-provided housing.

> The words "in the course of the employment" relate to the time, place, and circumstances under which the accident

takes place, and an accident arises in the course of the employment when it occurs within the period of employment at a place where the employee may reasonably be in the performance of his duties and while he is fulfilling those duties or engaged in something incidental thereto. [Cit.] The words "arising out of the employment" refer to the causal connection between the employment and the injury. [Cits.]

*New Amsterdam Cas. Co. v. Sumrell*, supra, 30 Ga. App. at 688-689. See also *Mayor &c. of Savannah v. Stevens*, supra, 278 Ga. 166 (1), (2).

Under Georgia's doctrine of continuous employment, more commonly known nationally as "the traveling employee" doctrine, there is broader workers' compensation coverage afforded an employee who is "required by [his] employment to lodge and work within an area geographically limited by the necessity of being available for work on the employer's job site." *Wilson v. Ga. Power Co.*, 128 Ga. App. 352 (1) (196 SE2d 693) (1973). See also *U.S.F. & G. Co. v. Navarre*, 147 Ga. App. 302, 304-305 (248 SE2d 562) (1978). Such an employee is, "in effect, in continuous employment, day and night, for the purposes of the [Workers'] Compensation Act" (id.), and activities performed in a reasonable and prudent manner for the health and comfort of the employee, including recreational activities, arise out of and are in the course of the employment. *Thornton v. Hartford Acc. &c. Co.*, 198 Ga. 786, 790 (32 SE2d 816) (1945); *McDonald v. State Hwy. Dept.*, 127 Ga. App. 171, 176 (192 SE2d 919) (1972). See also *Williams v. Atlanta Family Restaurants*, 204 Ga. App. 343 (419 SE2d 328) (1992). Acts necessary to the health and comfort of the traveling employee are "incidents of his employment and acts of service therein within the meaning of the [workers'] compensation act..." (*Thornton v. Hartford Acc. &c. Co.*, supra, 198 Ga. at 790), and the employment is not broken "by mere intervals of leisure . . . unless the [employee] is doing something wholly foreign to his employment." Id. at 788.[1]

---

[1] Acts within the broader coverage afforded traveling employees in continuous employment include relaxation activities. *McDonald v. State Hwy. Dept.*, supra, 127 Ga. App. at 175-176 (workers' compensation awarded employee assigned to a project for which the employer provided housing five days a week for injury incurred after he ministered to his personal comforts by relaxing with alcoholic beverages and refreshments while playing cards since these activities were not "wholly foreign to his employment"). However, the traveling employee in continuous employment must make "normal or prudent" decisions regarding activities in order to maintain continuous employment coverage. *Williams v. Atlanta Family Restaurants*, 204 Ga. App. 343, 345-346 (419 SE2d 328) (1992) (workers' compensation coverage denied to employee housed by employer in a hotel to attend an out-of-town training session who went to another site to do laundry, accepted an offer from strangers of a ride to her lodgings in lieu of a like offer from her employer's supervisory personnel, and suffered injuries resulting from a criminal assault during that ride, because the decisions the employee made regarding her safety were not "normal or prudent").

Workers' compensation coverage is not afforded a traveling employee in continuous employment when the employee is engaged in a personal mission not related to the health and comfort of the employee. *Thornton v. Hartford Acc. &c. Co.*, supra, 198 Ga. at 790 (a traveling employee in continuous employment, day and night, can step aside from his employment for reasons in no way connected with his employment). However, the traveling employee completes the personal mission and resumes continuous employment coverage when the employee is "in the general proximity of the place where he was employed to be and at a time he was employed to be in that general proximity." *London Guarantee &c. Co. v. Herndon*, 81 Ga. App. 178, 181 (58 SE2d 510) (1950). It is undisputed that King engaged in a personal mission unrelated to his employment when he delivered family furniture to his storage shed. However, the appellate division of the State Board of Workers' Compensation found that King's deviation from his employment had ended and he had resumed his employer's business by the time he sustained the injury.

While generally an employee again resumes the duties of the employer when the employee "turns back" from the personal mission (id.), "at some point a departure from the master's business may become so great that merely concluding the personal errand and turning back will not be viewed as the resumption of the employer's business." *Lewis v. Chatham County Savannah &c. Comm.*, 217 Ga. App. 534, 535 (458 SE2d 173) (1995). The determination whether the injury occurred in the general proximity of the place the employee was employed to be at a time he was employed to be in that general area was a question of fact for the ALJ and the appellate division of the State Board of Workers' Compensation. *South Ga. Timber v. Petty*, supra, 218 Ga. App. at 499; *Lewis v. Chatham County Savannah &c. Comm.*, supra, 217 Ga. App. at 535.

Construing the evidence in the case at bar in the light most favorable to the party who prevailed before the appellate division, King sustained his injuries within the general proximity of the Fayetteville/Jackson area, the place where he was employed to be at a time he was employed to be in that general proximity.[2] With King's return to the general proximity of the Fayetteville/Jackson area in which he was in continuous employment as a traveling employee, his continuous employment coverage resumed whether he was resuming his trip to the employer's job site (*Railway Express Agency v. Shuttleworth*, 61 Ga. App. 644, 650 (7 SE2d 195) (1940) (injury sustained by

---

[2] In the absence of any evidence of the termination of King's employment while he was on medical leave or the employer's suspension of the requirement that King live away from home and near the job site during that period, his "medical leave" status does not affect coverage as a traveling employee in continuous employment.

traveling employee in continuous employment by ordinary hazards of the transportation used on the way to job would be compensable)),[3] or was returning to his employer-provided housing. See *Sosnoski v. SAIF Corp.*, 55 P3d 533 (Or. App. 2002) (traveling employee was covered for injuries received while driving car back to employer-provided lodging after a personal mission that had resulted in his incarceration and the car's impoundment). Accordingly, we affirm the judgment of the Court of Appeals affirming the trial court's affirmance of the appellate division of the State Board of Workers' Compensation.

*Judgment affirmed. All the Justices concur, except Carley, Thompson, and Melton, JJ., who dissent.*

MELTON, Justice, dissenting.

Howard King was fatally injured in a car accident. It is undisputed that, at the time of the accident, King, a superintendent for Ray Bell Construction Company, was on the second leg of a personal mission to move some of his late mother's furniture from Fayetteville, Georgia to a storage shed located in Alamo, Georgia. It is also undisputed that King was off-duty during the pendency of this trip; in fact, King was on sick leave from work at the time. Under these undisputed facts, King's injuries did not arise out of or in the course of his employment as a matter of law. To the contrary, there was no causal connection between King's employment and his accident. As a result, workers' compensation did not cover King's injuries. For this reason, I must respectfully dissent from the opinion of the majority.

The record shows that King, a resident of Florida, was stationed at a job site in Jackson, Georgia, and he lived in a company-provided apartment in Fayetteville, Georgia. Ray Bell Construction provided a truck to King and allowed him to use it for both business and personal use. On a Sunday at the end of a week during which he was on sick leave from work due to knee surgery, King decided to transport some of his late mother's furniture to a storage shed owned by him in Alamo, Georgia.[4] After dropping off the furniture at the shed, King's vehicle was struck by another car on the return leg of his trip.

---

[3] We note that an award of compensation based on the finding of the appellate division of the State Board of Workers' Compensation that King had been injured on his way to the job site is also supported by application of the doctrine which provides coverage to an employee injured on his way to or from work while in a vehicle furnished by the employer as an incident of the employment. *American Mut. Liability Ins. Co. v. Curry*, 187 Ga. 342, 353-354 (200 SE 150) (1938). While a deviation from the trip to the job site to accomplish a personal mission would not be covered (*Lewis v. Chatham County Savannah &c. Comm.*, supra, 217 Ga. App. at 535), the factual determination by the appellate division that the personal mission had ended at the time the injury was sustained authorizes an award of compensation under this theory as well.

[4] A day earlier, King had retrieved the furniture from Murfreesboro, Tennessee, where his mother had resided.

King died from his injuries, and an award of workers' compensation benefits was subsequently given to the mother of King's minor child. This award is now being challenged.

"Generally, an injury is compensable only if it arises out of and in the course of the employment. The test presents two independent and distinct criteria, and an injury is not compensable unless it satisfies both." *Mayor &c. of Savannah v. Stevens*, 278 Ga. 166 (1) (598 SE2d 456) (2004). See also OCGA § 34-9-1 (4). As explained below, King's injury does not satisfy either prong.

1. King's injury did not occur in the course of his employment. "An injury arises in the course of certain employment if the employee is engaged in that employment at the time the injury occurs. Generally, a workman injured while going to and from his place of work is not in the course of his employment." (Punctuation omitted.) *Stevens*, supra, 278 Ga. at 166-167. In some situations, however, an employee will be considered to be in the continuous employment of his employer.

> The scope of employment of a traveling employee is broader than that of an ordinary employee. An employee who is taken from his home by his or her employment and who of necessity must eat and sleep away from home in order to further the employer's business may be considered to be in the continuous employment of the employer, day and night.

(Citation omitted.) *Boyd Brothers Transp. Co. v. Fonville*, 237 Ga. App. 721, 722 (516 SE2d 573) (1999). However, simply because an employee is considered to be in the continuous employment of his employer, it "does not mean that he can not step aside from his employment for personal reasons, or reasons in no way connected with his employment, just as might an ordinary employee working on a schedule of hours at a fixed location." *General Fire &c. Co. v. Bellflower*, 123 Ga. App. 864, 867 (3) (182 SE2d 678) (1971).

Furthermore,

> [t]he words "in the course of the employment" relate to the time, place, and circumstances under which the accident takes place, and an accident arises in the course of the employment when it occurs within the period of employment, at a place where the employee may reasonably be in the performance of his duties, and while he is fulfilling those duties or engaged in something incidental thereto.

(Punctuation omitted.) *Bellflower*, supra, 123 Ga. App. at 867 (3).

In this case, King had, in fact, stepped away from his employment by going on a purely personal mission during a period of time when he was on sick leave from his employment. That mission, to take his mother's furniture to a storage shed, was not related to the performance of his duties or even incidental thereto. Therefore, workers' compensation does not cover King's injuries because they did not occur "in the course of employment."

2. King's injury also did not arise out of his employment. "An injury arises out of certain employment when it results from exposure occasioned by the nature of the employment, or where there is a causal connection between the conditions under which the work is required to be performed and the resulting injury." (Punctuation omitted.) *Stevens*, supra, 278 Ga. at 167 (2). An injury cannot be said to arise out of employment if caused by a " 'hazard to which the work(er) would have been equally exposed apart from the employment.' " Id. Moreover,

> [t]he causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from the source as a rational consequence.

*Bellflower*, supra, 123 Ga. App. at 868 (4).

In some cases, an employee may start on a mission for his employer, deviate from that mission, and then return to the responsibilities of his employment.

> Where the employee breaks the continuity of his employment for purposes of his own and is injured before he brings himself back into the line of employment, his injury does not arise out of or in the course of his employment, but where the personal mission has been accomplished and the employee is once more engaged in the duties of his employment, the injury arises out of and in the course of the employment.

(Punctuation omitted.) *Lavine v. American Ins. Co.*, 179 Ga. App. 898, 899-900 (348 SE2d 114) (1986). See also *London Guarantee &c. Co. v. Herndon*, 81 Ga. App. 178, 181-182 (58 SE2d 510) (1950).

These "limited deviation" cases are inapplicable to the matter at hand, however, because King's mission was wholly personal *from its inception.* Unlike the plaintiffs in *Lavine* and *Herndon*, King did not start out on a business mission, deviate, and then return to the

business mission. To the contrary, King's mission was entirely a deviation from start to finish. The "limited deviation" theory has never been applied to an employee's trip that is wholly personal from its inception. Therefore, the "turning back" doctrine established in the "limited deviation" cases cannot convert King's mission from a personal trip into a business trip. Likewise, the appellate division's equivocal findings regarding King's return trip do not qualify this case as a "limited deviation" case. The appellate division found that, at the time of the accident, King was either on his way to his worksite or to his apartment. Given the initial nature of King's mission, neither of these purposes brought King back into the scope of his employment. He could not have *resumed* his employer's business on his mission because there was no business to resume.[5] On a given mission, one cannot go back into or resume something one has never started.

Moreover, even if the cases regarding an employee's temporary deviation from his duties were applicable here, King's injuries would still not be compensable for purposes of workers' compensation. As an initial matter, "[f]or a deviation to come to an end at the moment a worker turns back, [at that moment] the worker must be 'in the general proximity of the place where he was employed to be and at a time he was employed to be in that general proximity.' " *South Ga. Timber Co. v. Petty*, 218 Ga. App. 497, 498 (462 SE2d 176) (1995) (citing *Herndon,* supra, 81 Ga. App. at 181). "[A] . . . substantial deviation [outside the area of employment] may lead to the conclusion that an injury sustained while returning from the mission does not arise out of or in the course of employment." Id. It is undisputed that King was not in the general proximity of his employment in Alamo, Georgia, where King turned back. Therefore, he did not resume his employment by turning back towards the location of his employer.

Moreover, it has been held that

> at some point a departure from the master's business may become so great that merely concluding the personal errand and turning back will not be viewed as a resumption of the employer's business. . . . This area . . . may be associated with cases which hold that injuries received by an employee while

---

[5] The majority's reliance on the "turn around" doctrine is alarming in light of the fact that neither the ALJ nor the appellate division concluded that King was actually returning to work. The closest finding was the appellate division's determination that King was "on his way to *either* his job site or his employer provided apartment." (Emphasis supplied.) The majority treats this equivocation as immaterial, thereby advancing the erroneous implication that an employee's act of returning home, under any set of circumstances, is enough to constitute a compensable turn around.

on a purely personal mission which bears no purpose of benefit for the employer do not arise out of and in the course of employment.

*Lewis v. Chatham County Savannah &c. Comm.*, 217 Ga. App. 534, 535 (458 SE2d 173) (1995).[6] It is undisputed that King's mission in this case was purely personal and wholly unrelated to his employer's business. Again, this demands a finding, as a matter of law, that King's injuries were not covered by workers' compensation benefits. The appellate division's equivocal findings regarding the second leg of King's personal mission do not change the conclusion that, as a matter of law, King's return trip began at a place outside the general proximity of his employment and the entire trip was so wholly unrelated to his employment that his injuries are not compensable. Id.

At the time of his accident, King, while on personal sick leave from his employment, was still in the process of completing his wholly personal mission.

> There was no business of [Ray Bell Construction in Alamo, Georgia], and [King] did not intend to render [Ray Bell Construction] any service there. [Ray Bell Construction] had not expressly ordered [King] to make such excursion. . . . It was not essential nor reasonably necessary to [King's employment] nor in furtherance of [Ray Bell Construction's] business that [King should transport his mother's furniture to a storage shed].

*U. S. Fidelity &c. Co. v. Skinner*, 188 Ga. 823, 829 (1) (5 SE2d 9) (1939). As such, "[t]he evidence demanded a finding that the injury to [King] did not arise out of and in the course of his employment, within the meaning of the Georgia workmen's compensation law." Id. at 830.

3. In affirming the appellate division's grant of workers' compensation, the majority correctly points out that this Court must defer to the factfinding function of the appellate division. The majority overlooks, however, that this case may be resolved on the undisputed facts of record, and that these undisputed facts require a legal, not factual, conclusion contrary to the appellate division's ruling. The operative facts conclusively show that: (1) King's mission was wholly personal

---

[6] In the related field of respondeat superior, it has been held that, "[w]here a trip is wholly a personal venture outside the scope of an employee's employment, and his conduct is a complete departure instead of a deviation or detour incidental to his employment, the master will not be liable for the acts of negligence of the employee." *Fulton Bag & Cotton Mills v. Eudaly*, 95 Ga. App. 644 (98 SE2d 235) (1957) (syllabus).

862

from its inception, and, for the entire duration of the mission, King was on sick leave from employment; (2) King's mission took him to Alamo, Georgia, a city outside the general proximity of his employment; and (3) King's employer had no business in Alamo, Georgia and did not instruct King to go there. Given these undisputed facts, the following respective points of law demand a finding that King's injuries were not compensable: (1) an employee's mission which is wholly personal from its inception is not subject to a "turn around" theory of continuous employment and, therefore, is not compensable, see, *Lewis*, supra; (2) after taking a personal trip to a destination outside of the general proximity of his employment, an employee does not return to his employment by the simple act of turning around to return for work, see *Herndon*, supra; and (3) workers' compensation does not reach an employee's personal mission when that mission is wholly unrelated to the business of an employer, see *Skinner*, supra.

Given the undisputed facts of this matter and the corresponding conclusions of law they require, none of the cases cited by the majority actually supports its conclusion, including cases from other jurisdictions. As just one example, the majority cites *Sosnoski v. SAIF Corp.*, 55 P3d 533 (Or. App. 2002), for the proposition that a "traveling employee was covered for injuries received while driving [his] car back to employer-provided lodging after a personal mission that resulted in his incarceration and the car's impoundment." A fact central to that decision, however, was that the employee's mission took him no more than six miles from his hotel. Therefore, the entirety of the employee's activities were within a "reasonable distance" from his employment. A case with such a factual scenario, of course, simply has no application here, as King's mission took him outside the proximity of his employment.

For all of the above reasons, the award of workers' compensation benefits in this case must be reversed. I am authorized to state that Justice Carley and Justice Thompson join in this dissent.

DECIDED MARCH 26, 2007 —
RECONSIDERATION DENIED APRIL 10, 2007.

*Shivers & Associates, Edwin G. Russell, Jr.*, for appellants.
*Timothy V. Hanofee*, for appellee.