A09A0456. CITY OF ATLANTA et al. v. ROACH.

(677 SE2d 426)

MIKELL, Judge.

In this workers' compensation case, an administrative law judge ("ALJ") determined that Richard Roach, a City of Atlanta police officer, sustained a compensable "superadded injury" on March 6, 2006, when he suffered third-degree burns to his left hip after falling asleep on a heating pad. Roach's hip had been fractured in a work-related incident in 2004. The appellate division of the State Board of Workers' Compensation (the "Board") reversed the ALJ's decision, with one judge dissenting. Roach appealed to the superior court, which set aside the Board's award and reinstated the ALJ's award. We granted the application for discretionary appeal filed by the City of Atlanta and Novapro Risk Solutions, LP, the City's servicing agent (collectively the "City"). For the reasons that follow, we reverse the judgment of the superior court insofar as it ruled that Roach sustained a superadded injury. However, we hold that the issue of attorney fees awarded by the ALJ is moot.

In reviewing a workers' compensation award, both this Court and the superior court must construe the evidence in the light most favorable to the party who prevailed before the Board.[1] The Board's factual findings are conclusive and binding on a reviewing court

---

[1] *Ray Bell Constr. Co. v. King*, 281 Ga. 853, 854 (642 SE2d 841) (2007); *Lavine v. American Ins. Co.*, 179 Ga. App. 898, 900 (348 SE2d 114) (1986) (whole court).

when supported by any evidence,[2] and neither this Court nor the superior court is authorized to substitute itself as a factfinding body in lieu of the Board.[3]

Viewed in the light most favorable to the City, the evidence adduced at the hearing before the ALJ reveals that on May 13, 2004, Roach was driving his police vehicle when he was struck head-on by a drunk driver. The police vehicle burst into flames, and Roach had to be physically extracted from it. Due to swelling and hematomas in his brain, Roach was placed in a medically-induced coma for two weeks. In addition to the traumatic brain injury, Roach suffered a fractured left hip and pelvis. While he was in a coma, his hip was reconstructed with wire, screws, and rods. On August 23, 2005, Roach's authorized treating physician assessed him a 12 percent whole-body permanent partial disability based on impaired cognition and impaired gait. The physician indicated that Roach functioned at a medium duty work level.

In September 2005, Roach relocated to Rochester, New York. In March 2006, Roach drove approximately 16 hours from Rochester to Atlanta to meet with his commanding officer to discuss returning to work. Roach made the return drive back to New York in one day, and when he reached home, his left hip was sore. Roach placed a heating pad on his hip to alleviate the soreness, and he fell asleep. The heating pad caused third-degree burns. Roach explained that he did not realize the heating pad had burned his leg until after he awoke. Roach testified that the heating pad "burned an area where I couldn't feel [due to nerve damage from his hip surgery]." Roach testified that he regularly sleeps using a heating pad to alleviate soreness on various parts of his body, including his back, arms, and the part of his hip that still has feeling. Finally, Roach testified that the heating pad had not been prescribed by a physician.

Following the hearing, the ALJ found from a preponderance of competent and credible evidence that Roach suffered a superadded injury on March 6, 2006. Specifically, the ALJ determined that the burn injury was "related to" Roach's work-related injuries and that the usage of the heating pad was reasonable and necessary for the work-related hip injury. The ALJ's award included payment of medical expenses associated with the burn injury and $3,000 in attorney fees. In reversing, the Board held:

A superadded injury arises as a natural consequence of, or directly from, the original event. See *J. M. Huber Corp. v.*

---

[2] *King*, supra.
[3] Id. Accord *Shuman v. Engineered Fabrics*, 220 Ga. App. 636 (469 SE2d 847) (1996).

*Holliday*, 228 Ga. App. 4 (491 SE2d 74) (1997). In this case, we find that the employee's burn injury to the left hip did not arise as a natural consequence of the employee's work-related left hip fracture on May 13, 2004.

In so holding, the Board relied upon the medical evidence, and Roach's own testimony, that the burn was the result of his lying on a heating pad and falling asleep. In addition, the Board found that the "burn injury was not the result of reasonably required medical treatment prescribed or authorized for the treatment of [Roach's] original work-related left hip injury" since the burn did not result from "medical treatment" within the meaning of *Standridge v. Candlewick Yarns*.[4] The Board noted that no doctor, including Roach's authorized treating physician, had recommended or prescribed the use of a heating pad. Finally, the Board set aside the award of attorney fees.

In reversing the Board's decision, the superior court relied on OCGA § 34-9-105 (c), which permits the court to set aside the Board's decision if, among other things, "[t]here is not sufficient competent evidence in the record to warrant the members making the decision; or . . . [t]he decision is contrary to law."[5] First, the court concluded that the decision was contrary to law because the Board had imposed the requirement of a "direct causal relationship" between the original injury and the superadded injury. The court decided that the injury was compensable because the heating pad was used as "a consequence" of the original hip injury. The court also rejected what it termed as the Board's legal conclusion that a superadded injury that results from medical treatment "must be specifically 'prescribed or authorized' in order for the injury to be superadded and compensable." Finally, the court determined that "there is a complete absence of medical or testimonial evidence in the record . . . to support the conclusion that the heating pad was unreasonable or unnecessary." The City challenges the superior court's decision. We reverse.

1. As the City contends, the Board correctly relied on *Holliday* in analyzing Roach's injury.

The "superadded injury" principle generally has been discussed in regard to consequences stemming from physical injuries which are unrelated to the employee's medical treatment, e.g., psychological disorders; aggravation of health problems by the work-related injury; or incapacitat-

---

[4] 202 Ga. App. 553, 555 (415 SE2d 10) (1992).
[5] OCGA § 34-9-105 (c) (4), (5).

ing pain in one member caused by the work-related injury. A superadded injury generally arises as a natural consequence of, or directly from, the original event and is not the result of a new event or accident.[6]

In *Holliday*, the ALJ found as a fact that the employee had suffered a new injury when he fell and fractured the same knee that he had hurt on the job, and we held that the ALJ erred in concluding that the injury was a compensable superadded injury.[7] In the case at bar, while the Board did not expressly find that the burn was a new injury, the Board did find that the burn injury did not arise as a "natural consequence of" or arise "directly from" the fractured hip. Rather, the Board found that the burn arose from a combination of Roach using a heating pad *and* falling asleep while lying upon the pad. Factual questions concerning causation are properly left to the Board to determine.[8] As there is some evidence in the record to support these findings of fact, the superior court was bound by them.[9] In addition, the Board's findings supported its legal conclusion that the burn was not a compensable superadded injury. The superior court thus erred in concluding that the Board's decision was contrary to law.

Furthermore, the superior court erred in reversing the Board's conclusion that Roach's burn injury did not constitute a superadded injury within the meaning of *Standridge*.[10] We noted in *Standridge* that "the 'superadded injury' principle has also been applied to hold compensable an incapacitation resulting from medical treatment undertaken to cure the work-related injury."[11] In so noting, we cited cases in which the treatment resulting in additional injury was either authorized or prescribed for the employee.[12] Here, the Board

---

[6] (Citations and punctuation omitted.) *Holliday*, supra at 6. See also *Baugh-Carroll v. Hosp. Auth. of Randolph County*, 248 Ga. App. 591, 595 (2) (545 SE2d 690) (2001) ("An employee sustains a compensable superadded injury when, as a result of a work-related disability to one part of the body, the employee suffers a disabling injury to another part of the body"), citing *ITT Continental Baking Co. v. Comes*, 165 Ga. App. 598, 599 (1) (302 SE2d 137) (1983) (physical precedent only).

[7] *Holliday*, supra.

[8] *City of Buford v. Thomas*, 179 Ga. App. 769, 771 (1) (a) (347 SE2d 713) (1986).

[9] See, e.g., *Baugh-Carroll*, supra (record contained evidence to support Board's factual finding that employee's knee problems constituted a change in condition, which supported legal conclusion that employee had sustained a superadded injury; superior court erred in concluding otherwise).

[10] Supra.

[11] Id. at 555.

[12] See *Sanders v. Ga.-Pacific Corp.*, 181 Ga. App. 757, 760 (2) (353 SE2d 849) (1987) (skin graft necessary as a result of original injury); *Noles v. Aragon Mills*, 116 Ga. App. 560 (158 SE2d 261) (1967) (same).

relied on *Standridge* in determining that Roach's burn injury was not the result of reasonably required medical treatment prescribed or authorized for his work-related hip injury. Further, the Board made factual findings, as follows:

> A review of the competent and credible evidence in the record reflects that the employee applied the heating pad for use of soreness and aches, on other parts of his body, and for aches related to non-work related activities, other than those associated with his work injury. We also find that the prolonged use of a heating [pad] together with falling asleep while using the pad is not "reasonable treatment" as contemplated by the [Workers' Compensation] Act. . . . Based upon a review of the preponderance of competent and credible evidence in the record, we find that the employee's use of the heating pad was not reasonable and necessary medical treatment for the employee's work-related hip injury. As such, to the extent the [ALJ] found that the employee sustained a superadded burn injury related to the employee's work-related left hip fracture, we find the [ALJ] erred.

The provision of the Workers' Compensation Act to which the Board referred states as follows:

> The employer shall furnish the employee entitled to benefits under this chapter such medical, surgical, and hospital care and other treatment, items, and services which are prescribed by a licensed physician, . . . which in the judgment of the State Board of Workers' Compensation shall be reasonably required and appear likely to effect a cure, give relief, or restore the employee to suitable employment.[13]

"The purpose behind [this Code section] is to provide services *prescribed by a licensed physician* which give relief to the work-related injury of the employee."[14] Although this statute encompasses nonmedical items and services, they must be prescribed by a licensed physician, and, in the Board's judgment, reasonably required to give relief.[15] As the heating pad was not prescribed by a physician, and it was within the Board's power as a factfinding body to determine that

---

[13] OCGA § 34-9-200 (a).

[14] (Punctuation omitted; emphasis supplied.) *Berry College v. Storey*, 199 Ga. App. 298, 299 (2) (404 SE2d 640) (1991).

[15] Id. at 298-299 (1).

prolonged use of the device while sleeping was not reasonable and necessary medical treatment,[16] the Board's conclusion that the burn injury was not "an incapacitation resulting from medical treatment undertaken to cure the work-related injury"[17] was not contrary to law. The superior court erred in setting aside the Board's award on this ground.

2. Finally, the City argues that the superior court erred in reinstating the ALJ's award of attorney fees to Roach. The superior court, however, did not expressly rule on the issue of attorney fees. Roach argues on appeal, as he did in the court below, that the issue is moot because the City paid the attorney fees as soon as the ALJ issued the award. As Roach notes, "[a]n appellant's voluntary payment of the judgment renders moot the issues sought to be determined on appeal."[18] In the absence of argument or citation of authority by the City on the question of mootness, we agree with Roach that this issue is moot.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Ellington, J., concur.*

DECIDED APRIL 8, 2009.

*Swift, Currie, McGhee & Hiers, Todd A. Brooks*, for appellants.
*Cummings & Middlebrook, William M. Cummings II, Scott D. Delius*, for appellee.

---

[16] See *Hallisey v. Fort Howard Paper Co.*, 268 Ga. 57, 58-59 (1) (484 SE2d 653) (1997) (Board's decision "cannot be disturbed as long as there is any evidence to support it, because neither the superior court nor the appellate court has the power to find facts") (citations omitted).

[17] *Standridge*, supra.

[18] (Citations omitted.) *Nash v. Pierce*, 238 Ga. App. 466 (1) (519 SE2d 462) (1999), citing *Morris v. Morris*, 242 Ga. 591 (1) (250 SE2d 459) (1978) (issue of award of attorney fees in alimony case moot because husband already paid them). Compare *Claxton Enterprise v. Evans County Bd. of Commrs.*, 249 Ga. App. 870, 872-873 (1) (549 SE2d 830) (2001) (partial payment of attorney fees did not moot appeal because issue was collateral to the main judgment).