**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 18, 2013**

# In the Court of Appeals of Georgia

A13A0930. ROYAL v. PULASKI STATE PRISON.

BARNES, Presiding Judge.

Sherri Royal appeals the superior court's order affirming the decision of the Appellate Division of the State Board of Workers' Compensation, which had in turn adopted the findings and conclusions of the administrative law judge ("ALJ"). Royal contends that the superior court erred in affirming the Appellate Division because the Division "ignored the Employer's action of terminating Ms. Royal because of her work restriction that arose out of her compensable work injury." Because the record contains some evidence to support the Appellate Division's denial of benefits, we affirm the superior court's order.

> In reviewing a workers' compensation award, both the appellate court and the superior court must construe the evidence in the light most favorable to the party prevailing before the appellate division of the

State Board of Workers' Compensation. It is axiomatic that the findings of the State Board of Workers' Compensation, when supported by any evidence, are conclusive and binding.

(Citation and punctuation omitted.) *Ray Bell Constr. Co. v. King*, 281 Ga. 853, 854 (642 SE2d 841) (2007). "[E]rroneous applications of law to undisputed facts, as well as decisions based on erroneous theories of law, are subject to a de novo standard of review." (Citation omitted.) *Trax-Fax, Inc. v. Hobba*, 277 Ga. App. 464, 464 (627 SE2d 90) (2006). The Act also provides that an injured worker must miss seven or more days of work before she is entitled to receive income benefits. OCGA § 34-9-220. If the employee subsequently seeks income benefits, her claim requires "a hearing on all issues as opposed to a change-in-condition hearing." (Citation omitted.) *Diamond Rug & Carpet Mills v. Moses*, 221 Ga. App. 807, 809, n. 1 (472 SE2d 565) (1996).

In this case, Royal sought temporary total disability income benefits beginning May 13, 2008, medical treatment, attorney fees, and penalties, contending that a compensable work-related injury on March 19, 2008[1] impaired her earning capacity.

---

[1] Documents in the record refer to both March 18, 2008 and March 19, 2008 as the date of injury; for consistency, we will refer to the date as March 18, 2008.

2

The parties stipulated to the ALJ that Royal sustained an injury to her lungs on March 19, 2008 by inhaling chlorine bleach fumes in the course of her employment at the Pulaski State Prison, which temporarily aggravated her pre-existing asthma and caused her to cough uncontrollably. She was treated at a nearby emergency room and released a few hours later, The employer accepted Royal's workers compensation claim as medical-only and paid the emergency room bill and other medical bills. Royal did not work for five days following the exposure, then returned to work as scheduled on March 28, 2008.

Royal testified that she worked for six days, through April 17, 2008, then saw her family doctor on April 18, 2008, because she was not feeling well. He diagnosed her with pneumonia and admitted her to the hospital for four days. On May 12, 2008, her physician released her to return to work with a work restriction of having to avoid strong chemical fumes due to a sensitivity, but after two-and-a-half hours at work the next day, the employer advised her it could not accommodate her restriction and sent her home.

The employer controverted medical payments beginning with Royal's hospitalization on April 18, 2008 for pneumonia, contending that the treatment was unrelated to her work-related injury. Royal remained on leave with pay through

December 15, 2008, then was placed on leave without pay for 12 months, until December 17, 2009, when she was separated for failing to return from a leave of absence.[2]

Royal asserted that she was entitled to continuing medical benefits beginning with her April 18, 2008 hospitalization for pneumonia, and to temporary total disability income benefits because her sensitivity to strong chemical fumes was caused by her March 18, 2008 exposure to chlorine bleach fumes. In response, her employer argued that Royal had recovered from the chemical exposure when she returned to work on March 28, 2008 after her treating physician cleared her to do so without restrictions, and that any subsequent disability was related to pre-existing conditions that were not work-related.

In determining whether Royal was entitled to income benefits and additional medical benefits due to her work-related injury, the ALJ considered Royal's medical history before and after her exposure to chlorine fumes in March 2008. The ALJ

---

[2]On July 9, 2010, an administrative law judge for the Social Security Administration's Office of Disability Adjudication and Review determined that Royal was disabled from severe asthma, obstructive sleep apnea, obesity, and diabetes beginning March 19, 2008. The Social Security ALJ found that, while Royal had the residual functional capacity to perform sedentary work, she was unable to work eight hours a day or 40 hours a week on a regular basis.

4

noted that Royal left work in 2005 after inhaling bleach fumes but returned to work the following day after receiving medical treatment. She had been treated by an ear, nose, and throat doctor (ENT) for chronic coughing in September and October 2007, treated for chronic bronchitis in January 2008, and had numerous other long-standing ailments.

The ALJ also considered reports and records from several doctors who had either treated Royal, examined her, or reviewed her medical history, including the ENT, Royal's family doctor, an "internal medicine and pulmonary specialist," a pulmonologist, and a neurologist-psychiatrist, as well as a report from an environmental medicine specialist who had reviewed Royal's records. After reviewing the evidence, the ALJ determined that Royal had not met her burden of proving by a preponderance of the evidence that she was disabled from April 18 to May 12, 2008 or that she experienced an economic disability from May 13, 2008 onward *as a result of her March 2008 inhalation injury*.

While the record contains evidence that could have supported a different conclusion, it also contains a substantial amount of evidence supporting the ALJ's conclusion. The ALJ noted that Royal's family doctor released her to work without restrictions on March 24, 2008, and that she worked from March 28, 2008 to April

17, 2008. When she saw the ENT on April 18, 2008 for severe coughing and wheezing, an x-ray revealed she had pneumonia and she was admitted to the hospital for four days. She improved and was discharged, and the ENT referred her back to her family doctor. The ALJ noted that, contrary to the parties' stipulations, Royal told her family doctor on May 5, 2008 that she had not worked since her exposure to bleach fumes on March 18, 2008. The family doctor concluded that the exposure had exacerbated Royal's chronic cough caused by reflux, which caused aspiration and pneumonia, and that an x-ray showed that the pneumonia had cleared. He released her to return to work on May 12, 2008 with a work restriction due to her being "allergic (sensitive) to inhaled chemical fumes especially strong bleach." On May 28, 2008, the ENT reported that Royal was disabled from the exposure from March 21 to 24, 2008, but that following her hospitalization for pneumonia in April 2008, she was able to return to work on May 9, 2008.

The ALJ found that Royal had misrepresented her medical history to an examining pulmonologist in November 2008, which caused the pulmonologist to change his opinion from believing that Royal had reactive airway dysfunction caused by her March 2008 exposure to believing Royal had experienced only a temporary aggravation of pre-existing asthma. The pulmonologist also tested her lung function

in November 2008 and concluded it was normal, as was a June 2008 lung function test he reviewed. He did not think her April 2008 pneumonia was related to her bleach exposure.

A psychiatrist who examined Royal in September 2009 concluded that the exposure exacerbated Royal's pre-existing reactive airway disease and bronchitis, but the ALJ noted that the history Royal gave the doctor contradicted her testimony about her ability to use strong cleaning fluids before and after the exposure. Royal told a different pulmonologist in June 2008 that she never had a coughing problem before the exposure but since then she had significant coughing and was on disability leave. That physician diagnosed acute bronchitis that was likely caused by a number of factors that could include reflux, exposure to bleach, and asthma. A sleep study in July 2008 revealed severe obstructive sleep apnea. An environmental medicine specialist reviewed Royal's medical records and concluded that the exposure caused chemically-induced pneumonitis and bronchial reactivity, which led to the development of a hypersensitivity to chlorine.

The ALJ found that Royal's treating physician released her to return to work on March 24, 2008, and the parties stipulated that she returned to work on her next scheduled work day on March 28, 2008. She worked until April 18, 2007, when she

was hospitalized for pneumonia by her family doctor, who along with the ENT kept Royal out of work until May 12, 2008. After reviewing disparities in Royal's medical history and her doctors' work releases, the ALJ concluded that the exposure did not cause Royal's period of disability from April 18 to May 12, 2008. The ALJ also concluded that the medical evidence indicated Royal had no permanent impairment to her lung functions or economic disability as a result of the March 2008 exposure, and that any disability she suffered was more likely caused by her sleep apnea, chronic bronchitis or asthma, high blood pressure, and diabetes.

The Appellate Division noted that the ALJ was in the best position to determine the credibility and weight of the evidence in the record and adopted the ALJ's findings of fact, conclusions of law, and award. Similarly, after noting that its standard of review was whether any evidence authorized a finding for the party prevailing before the Appellate Division, the superior court affirmed the Division's decision. In the face of conflicting evidence about whether the appellant's exposure to bleach fumes exacerbated a pre-existing condition to the extent that she became disabled, the fact-finder weighed the evidence and concluded that it did not. The Appellate Division adopted the ALJ's facts and legal conclusions, and the superior

court properly determined that the decision to deny benefits was supported by evidence in the record.

Royal argues that in this case, the ALJ misapplied the law to the facts, basically arguing that she had no restrictions before her exposure to chlorine fumes, that her exposure caused her to become sensitive to strong chemical fumes, and that the employer is required either to accommodate her restrictions or pay her benefits.

OCGA § 34-9-1 (4) defines injury, in part, to include

> the aggravation of a preexisting condition by accident arising out of and in the course of employment, but only for so long as the aggravation of the preexisting condition continues to be the cause of the disability; the preexisting condition shall no longer meet this criteria when the aggravation ceases to be the cause of the disability.

Accordingly, once the aggravation of a preexisting condition has ceased to be disabling, it is no longer compensable. See, e. g., *Smith v. Mr. Sweeper Stores*, 247 Ga. App. 726, 728 (1), n. 10 (544 SE2d 758) (2001); *Worthington Indus. v. Sanks*, 228 Ga. App. 782, 783-784 (2) (492 SE2d 753) (1997).

Here, the doctor released Royal to regular duty work as of March 24, and she did, in fact, perform her regular job until April 17. This constituted evidence that the aggravation caused by the March 18 incident had ceased to be disabling. While the

9

appellant would have us reconsider that evidence and come to a different conclusion, under our standard of review we cannot do so. Because the record contains some evidence supporting the ALJ's conclusions, which were adopted by the Appellate Division, the superior court did not err in affirming the Appellate Division.

*Judgment affirmed. Miller and Ray, JJ., concur.*